1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10  SAMMAMISH HOMEOWNERS, et al.,          CASE NO. C15-284 MJP

11              Plaintiffs,                ORDER RE: MOTION TO DISMISS
                                          FOR LACK OF STANDING
12        v.

13  COUNTY OF KING,

14              Defendant.

15

16        The above-entitled Court, having received and reviewed

17  1.  Defendant King County's FRCP 12(b)(1) & (6) Motion to Dismiss for Lack of Standing

18      (Dkt. No. 9)

19  2.  Plaintiffs' Opposition to Defendant King County's FRCP 12(b)(1) & (6) Motion to

20      Dismiss for Lack of Standing (Dkt. No. 12)

21  3.  Defendant King County's Reply in Support of FRCP 12(b)(1) & (6) Motion to Dismiss

22      for Lack of Standing (Dkt. No. 15)

23  and all related documents and exhibits, enters the following ruling:

24

ORDER RE: MOTION TO DISMISS FOR LACK
OF STANDING- 1

1    IT IS ORDERED that the motion is GRANTED; the matter is DISMISSED with leave to

2  amend.

3    IT IS FURTHER ORDERED that the pending motion for leave to file an amended

4  complaint (Dkt. No. 13; filed while this motion to dismiss was still pending) is DENIED.

5    IT IS FURTHER ORDERED that Plaintiffs must file a second amended complaint which

6  addresses the findings herein within 14 days of the filing of this order.

7

8  **Background**

9    This action concerns a 12.5 mile strip of railroad right of way running between Redmond

10  and Issaquah along Lake Sammamish.  The individual plaintiffs are owners of property adjoining

11  the strip (the "Corridor").  The owner of the Corridor (Burlington Northern – "BNSF" --

12  successor in interest to the Northern Pacific Railroad) was granted an exemption to abandon it in

13  May 1998.  In September 1998, the Surface Transportation Board, pursuant to the Trails Act

14  (16 U.S.C. § 1247(d)) authorized The Land Conservancy of Seattle ("TLC") and King County to

15  assume financial responsibility for the Corridor, and further authorized the issuance of a Notice

16  of Interim Trail Use for the Corridor, permitting King County and TLC to create a public

17  recreational trail through the former right of way.

18    King County and TLC have since reached an agreement with BNSF to "railbank" the

19  Corridor (permitting the use of the right of way as a recreational trail while preserving the

20  railroad's right to exercise their rights at a later date).  The tracks have been removed from the

21  strip.  Plaintiffs claim that Defendant's proposed actions are illegal and have clouded their fee

22  ownership associated with the Corridor.  They seek a declaratory judgment, a quiet title ruling

23  and an injunction against the County.

24

The language of the property deeds of the individual Plaintiffs is at issue here and relevant portions are noted below.

- **Hornish Trust**: The metes and bounds description describes the eastern boundary of the property as the "westerly line of the Northern Pacific right-of-way." Ex. B at 1.

- **Neighbors** (*the last name of the party*) **Deed**: The metes and bounds description of the lot lines includes the term "except that portion within the Northern Pacific Railroad right-of-way." Ex. C at 3.

- **Menzes/Vanderwende Deed**: The metes and bounds description of the lot lines includes the term "Except the right-of-way of the Northern Pacific Railroad." Ex. D at 2. (*Additionally, these Plaintiffs also own a second parcel which contains a portion of the original railroad corridor from the late 1800's – because of a 1996 adverse possession action by the previous title holder, the land contained in this second parcel was not part of the BNSF property interest acquired by King County. Plaintiffs do not dispute this in their responsive briefing.*)

- **Moores Deed**: The Moores' property is described in their metes and bounds description as "lying south of the Northern Pacific Railroad right-of-way." Ex. E at 1.

All of the individual Plaintiffs, regardless of the language in their deeds, allege that they own fee title in the Corridor. (Complaint, ¶¶ 13, 14, 15, 16.)

## Discussion/Analysis

Individual Plaintiffs' Standing

Beyond question, this lawsuit hinges on whether the individual landowners have standing to bring suit. The Court finds that the Plaintiffs currently before the Court have failed to establish standing.

Initially, there is the question of Article III standing: do Plaintiffs have a property interest in the Corridor such that they can allege the "injury in fact" required for constitutional standing? Plaintiffs have stated explicitly that they are relying on the "centerline presumption" doctrine to establish their fee title to the land in question.[1]  Not only have they implicitly conceded (by relying on the presumption) that the language of their deeds does not unambiguously create a fee title in the Corridor, but they have failed to rebut Defendant's arguments that they lack the necessary requirements to establish the "centerline presumption" as those requirements are enunciated in Roeder County v. Burlington Northern, 105 Wn.2d 567 (1986).

Roeder is the Washington case which established the "centerline presumption" doctrine:

> Generally then, the conveyance of land which is bounded by a railroad right of way will give the grantee title to the center line of the right of way if the grantor owns so far, unless the grantor has expressly reserved the fee to the right of way, or the grantor's intention to not convey the fee is clear.

Id. at 576.  However, the Washington Supreme Court set two restrictions on the presumption, and Plaintiffs have run afoul of both of them.

The first restriction states:

> The presumption that the grantor intended to convey title to the center of the right of way is inapplicable where the adjoining landowner presents no evidence of having received his or her property from the owner of the right of way.  A property owner receives no interest in a railroad right of way simply through ownership of abutting land.

Id. at 578.  Nothing alleged in or attached to the original complaint establishes that Plaintiffs have the required chain of title proof.

More immediately fatal to their claim is the second restriction:

---

[1] "Plaintiffs have cited specific facts demonstrating that they own land adjoining and abutting the former railroad corridor and, under the centerline presumption adopted by the Washington Supreme Court (and the majority of states in this country), they are presumed to own fee title to the centerline of the former railroad right-of-way."  Pltf Response at 4.

> When, however, a deed refers to the right of way as a boundary but also gives a metes and bounds description of the abutting property, the presumption of abutting landowners taking to the center of the right of way is rebutted.  A metes and bounds description in a deed to property that abuts a right of way is evidence of the grantor's intent to withhold any interest in the abutting right of way, and such a description rebuts the presumption that the grantee takes title to the center of the right of way.

Id. at 577.  The language of their deeds (which Plaintiffs attached to their original complaint) contains metes and bounds descriptions which use the right of way as a boundary line.  The inclusion of the deeds as attachments operates to overcome the standard "all allegations presumed to be factual" rule of 12(b) motions.

> A motion to dismiss pursuant to Rule 12(b)… admits all well pleaded facts, but does not admit facts which the court will judicially notice as not being true nor facts which are revealed to be unfounded by documents included in the pleadings or introduced in support of the motion.

Interstate Nat. Gas Co. v. Southern Calif. Gas Co., 209 F.2d 380, 384 (9th Cir. 1953).

With the centerline presumption rebutted, Plaintiffs have not properly alleged a property interest in the Corridor, and thus cannot plead an actual or even threatened "injury in fact" sufficient to establish Article III standing.

Plaintiffs attempt to evade the impact of Roeder.  They cite to a case called Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Assoc., 156 Wn.2d 253 (2006) as controlling, claiming that Roeder is distinguishable.  The case involved a quit claim deed from mother to son which excepted the "right-of-way of the Northern Pacific Railroad."  The Washington Supreme Court, analyzing not only the conveyance but also the circumstances of the transfer, found the language ambiguous and ruled that its only effect was to subject the son's fee interest to the railroad's easement.  Id. at 272.

This case is not helpful to Plaintiffs.  First and foremost, it is not a "centerline presumption" case, so the theory that Plaintiffs are relying on is not at issue in Kershaw.  Nor did

the Washington Supreme Court overrule any of the previous holdings of <u>Roeder</u> (in fact,

<u>Kershaw</u> calls <u>Roeder</u> "nearly indistinguishable."   <u>Id.</u> at 266.) – which means that <u>Roeder</u>'s

"metes and bounds rebutting the presumption" ruling remains intact.  Secondly, <u>Kershaw</u>

involves a clear generation-to-generation chain of title (the kind of "proof of chain of title" that

<u>Roeder</u> requires), while Plaintiffs here make no such claim (not even in their Amended

Complaint).  Finally, <u>Kerhsaw</u> is really about whether or not the railroad defendant had anything

more than an easement.  Defendant King County is willing to concede, for purposes of this

motion only, that all it possesses is an easement in the Corridor (Mtn at 8, n.4) – their argument

is that, regardless of the nature of <u>their</u> property interest in the Corridor, Plaintiffs have <u>no</u>

property interest and therefore no standing.

Perhaps sensing that they cannot sustain a "centerline presumption" argument, Plaintiffs

attempt to graft a doctrine from Texas state law called "strip and gore" onto this case.  Tellingly,

Plaintiffs do not even explain what the doctrine is when they cite to it in their brief.  The

"doctrine refers to the public policy rationale that disfavors 'the conveyance of strips of land by

fee simple titles to railroad companies for right-of-way purposes, either by deed or

condemnation.'"  <u>Blendu v. United States</u>, 79 Fed.Cl. 500, 507, n. 7 (Fed.Cl. 2007).  Plaintiffs do

not cite a single Washington case which has adopted the doctrine.

Plaintiffs' other "workaround" involves an argument that, even if the Court is not willing

to give them the benefit of the centerline presumption, their allegation that they possess a fee title

in the Corridor is enough for them to survive a 12(b) motion and they should be allowed to

develop the claim further through discovery.  But (as demonstrated *supra)* they are not entitled to

the usual "assume all allegations are factual" presumption normally applied in a 12(b) analysis.

<u>Interstate Nat. Gas Co. v. Southern Calif. Gas Co.</u>, 209 F.2d 380, 384 (9th Cir. 1953).  In this

1   case, the Court is not required to assume the truth of Plaintiffs' claim that they own fee title in

2   the Corridor when the language of the deeds they submitted as part of their complaint

3   demonstrates otherwise.

4          Plaintiffs lack Article III standing and their complaint is subject to dismissal on that

5   ground.  Their lack of Article III standing means that they lack statutory standing as well.  The

6   Washington statutes concerning quiet title and declaratory judgments (deeds) (RCW 7.28.010,

7   7.24.020) require a property interest and an injury in fact before suit may be brought under them.

8   Plaintiffs' complaint establishes neither.

9

10  Sammamish Homeowners' Standing

11         If the individual landowner plaintiffs do not have standing, any organization which

12  represents them does not have standing either.  Even if Plaintiffs were to establish individual

13  standing, however, Sammamish Homeowners faces further pleading hurtles.  Defendant cites to

14  Hunt v. Wash. State Apple Advertising Comm'n, 432 U.S. 333 (1977) for the requirements

15  which must be satisfied for "associational standing:"

16         [A]n association has standing to bring suit on behalf of its members when: (a) its member
            would otherwise having standing to sue in their own right; (b) the interests it seeks to
17         protect are germane to the organization's purpose; and (c) neither the claim asserted nor
            the relief requested requires the participation of individual members in the lawsuit.
18
19  Id. at 343.  Plaintiff Sammamish Homeowners attempts (unsuccessfully) to show that it has

20  satisfied the first requirement, but it ignores the other two requirements.  Nowhere in the original

21  (or amended) complaint do Plaintiffs allege what the purpose of the organization is and how this

22  lawsuit is germane to that purpose, nor do they attempt to argue that the association could bring

23  the lawsuit on its own without the owners' participation (a counterintuitive proposition at best).

24

ORDER RE: MOTION TO DISMISS FOR LACK
OF STANDING- 7

1  Most surprisingly, the original (and amended) complaint do not even allege that any of the

2  individual Plaintiffs are members of the association.

3          The Court finds that Sammamish Homeowners has not alleged adequate facts to establish

4  standing to sue in this matter.

5

6  Amending the Complaint

7          The Court does not find that amendment of this complaint would be futile and on that

8  basis will not dismiss this matter with prejudice.  The Court does, however, find that the

9  intervening amended complaint which Plaintiffs moved to file while this dismissal request was

10  pending (Dkt. No. 13) does not address the concerns raised in this order.

11         Plaintiffs' pending motion for leave to file an amended complaint is DENIED, and

12  Plaintiffs are ordered to file an amended complaint which addresses the issues raised herein

13  within 14 days of the filing of this order.

14

15         The clerk is ordered to provide copies of this order to all counsel.

16         Dated this 5th day of June, 2015.

17

18

19                                                            Marsha J. Pechman

20                                                            United States District Judge

21

22

23

24

ORDER RE: MOTION TO DISMISS FOR LACK
OF STANDING- 8