THE HONORABLE MARSHA J. PECHMAN

1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF WASHINGTON
9                      AT SEATTLE

10  THOMAS E. HORNISH AND SUZANNE J.
    HORNISH JOINT LIVING TRUST, TRACY
11  AND BARBARA NEIGHBORS, ARUL            No. 2:15-cv-00284-MJP
    MENEZES AND LUCRETIA
12  VANDERWENDE, LAKE SAMMAMISH 4257       **KING COUNTY'S MOTION FOR**
    LLC, HERBERT MOORE AND ELYNNE         **SUMMARY JUDGMENT**
13  MOORE, AND EUGENE MOREL AND
    ELIZABETH MOREL,                      **NOTE ON MOTION CALENDAR:**
14                                        **FEBRUARY 19, 2016**
                        Plaintiffs,
15                                        **ORAL ARGUMENT REQUESTED**
             v.
16
    KING COUNTY, a home rule charter county,
17
                        Defendant.
18

19

20

21

22

23

24

25

KING COUNTY'S MOTION FOR SUMMARY
JUDGMENT
No. 2:15-cv-00284

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF FACTS .......................................................................................2

III.    ISSUES ....................................................................................................................4

IV.     ARGUMENT ..........................................................................................................5

      A.      KING COUNTY IS ENTITLED TO SUMMARY JUDGMENT BECAUSE
            IT HOLDS A VALID RAILROAD EASEMENT AND TRAIL RIGHTS ............... 5

          1.      King County Is The Successor In Interest To All BNSF's Property
               Rights In The Corridor And Is The Trail Sponsor Under The Trails
               Act. ............................................................................................................ 5

          2.      The Trails Act Preserves All Of BNSF's Property Rights In The
               Corridor. .................................................................................................. 6

          3.      A Railroad Easement Under Washington Law Provides King County
               With The Right To Exclusive Use And Possession. ..................................... 7

          4.      Washington Law Provides King County With The Right To
               Incidental Uses Of The Railroad Corridor. .................................................. 8

      B.      KING COUNTY IS ENTITLED TO SUMMARY JUDGMENT AGAINST
            THE HORNISH PLAINTIFFS BECAUSE THE COUNTY OWNS A FEE
            INTEREST IN THE ADJACENT SEGMENT OF THE CORRIDOR. ..................... 9

      C.      KING COUNTY IS ENTITLED TO SUMMARY JUDGMENT AGAINST
            THE REMAINING PLAINTIFFS, BECAUSE THE RAILROAD
            EASEMENT ESTABLISHED IN THE ADVERSE POSSESSION AREAS
            OF THE CORRIDOR IS ONE HUNDRED FEET WIDE. ..................................... 11

          1.      Federal ICC/STB Records Confirm That The Railroad Originally
               Acquired A One Hundred Foot Wide Corridor. ............................................. 11

          2.      Records from the King County Assessor and Pierce County Superior
               Court Confirm A One Hundred Foot Wide Corridor. .................................. 14

          3.      The Actions Of Plaintiffs And Their Predecessors Confirm The
               Corridor Is One Hundred Feet Wide. ............................................................ 16

          4.      A One Hundred Foot Corridor Is Consistent With A Railroad's
               Operational Needs. ..................................................................................... 20

          5.      Even If The SLS&E Had Not Acquired A One Hundred Foot Wide
               Corridor, King County Has Acquired One Hundred Feet of Width
               Through Operation of RCW 7.28.070. .......................................................... 23

      D.      THE PLAINTIFFS LACK ARTICLE III STANDING TO ASSERT THEIR
            CAUSE OF ACTION AGAINST KING COUNTY UNDER THE

KING COUNTY'S MOTION FOR SUMMARY
JUDGMENT – Page *i*
No. 2:15-cv-00284

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

CENTERLINE PRESUMPTION BECAUSE THEIR DEEDS EXPRESSLY
EXCLUDE THE CORRIDOR. ................................................................................. 25

V.    CONCLUSION ..........................................................................................................29

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

KING COUNTY'S MOTION FOR SUMMARY
JUDGMENT – Page *ii*
No. 2:15-cv-00284

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

# TABLE OF AUTHORITIES

**Cases**

*810 Properties v. Jump*, 170 P.3d 1209 (Wash. Ct. App. 2007) ........................................ 21

*Alameda Corridor Transp. Auth. v. Stewart Title Guar. Co.*, 119 F. App'x 111 (9th Cir. 2004) .......................................................................................................................... 12

*Beres v. United States*, 104 Fed. Cl. 408 (2012) ............................................................ 2

*Beres v. United States*, 97 Fed. Cl. 757 (Fed. Cl. 2011) ......................................... 1, 2, 10

*Brown v. Alabama Great S. R. Co.*, 544 So. 2d 926 (Ala. 1989) ................................ 12, 22

*Cayward v. HSBC Bank USA, Nat. Ass'n*, 2013 WL 392718 (W.D. Wash. Jan. 31, 2013) ............ 19

*Chaplin v. Sanders*, 100 Wn.2d 853 (1984) ............................................................ 23, 25

*City of Creede, CO—Petition for Declaratory Order*, No. 34376, 2005 WL 1024483 (STB, May 3, 2005) ....................................................................................................... 22

*City of Jersey City, Rails to Trails Conservancy, Pennsylvania R.R. Harsimus Stem Embankment Pres. Coal., & New Jersey State Assemblyman Louis M. Manzo— Petition for Declaratory Order*, No. 34818, 2007 WL 4973945 (STB, Dec. 17, 2007), *vacated on other grounds*, Consol. Rail Corp. v. Surface Transp. Bd., 571 F.3d 13 (D.C. Cir. 2009) .......................................................................................................... 13

*City of Port Townsend v. Lewis*, 34 Wash. 413 (1904) ................................................... 18

*Dennis v. N. Pac. Ry. Co.*, 20 Wash. 320 (1898) .......................................................... 20

*Dugle v. Norfolk S. Ry. Co.*, 2010 WL 2710489 (E.D. Ky. July 7, 2010) .......................... 12

*Fies v. Storey*, 21 Wn. App. 413 (1978) ....................................................................... 23

*Gardenspot Ranch, Inc. v. Baker*, 11 Wn. App. 109 (1974) ............................................ 23

*Goldsmith v. Burlington Northern Railroad Co.,* King Cty. Sup. Ct. No. 96-2-24980-7 (Dec. 9, 1996) ............................................................................................................. 19

*Hanson Indus., Inc. v. Cty. of Spokane*, 114 Wash. App. 523 (Div. 3, 2002) ..................... 7

*Horse Heaven Heights, Inc.* ......................................................................................... 25

*Illig v. United States*, 58 Fed. Cl. 619 (2003) ......................................................... 12, 21

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

*In re Extension of West Marginal Way*, 186 P. 644 (Wash. 1919) ................................................... 20

*In re Watts*, 298 F.3d 1077 (9th Cir. 2002) ........................................................................... 10

*Jackson v. United States*, 122 Fed. Cl. 376 (2015) ................................................................ 12

*Jensen v. Compton*, 131 Wash. App. 1064 (Div. 1, 2006) ..................................................... 18

*Kakeldy v. Columbia & P.S.R. Co.*, 37 Wash. 675 (1905) ..................................................... 14

*Kaseburg v. Port of Seattle*, 2015 WL 4508790 (W.D. Wash. July 24, 2015) .................... 5, 6, 7

*Kaseburg v. Port of Seattle*, 2015 WL 6449305 (W.D. Wash. Oct. 23, 2015) .................... 7, 8, 9

*Kaseburg v. Port of Seattle*, No. 2:14-cv-00784-JCC, slip op., Dkt. No. 91 (April 23, 2015) ..................................................................................................................... 10

*Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Assoc.*, 121 Wn. App. 714 (2004), *reversed on other grounds*, 156 Wash. 2d 253 (2006) ....................................... 8

*King County v. Rasmussen*, 299 F.3d 1077 (9th Cir. 2002) .......................................... 2, 9, 10

*Lewis v. City of Seattle*, 5 Wash. 741 (1893) ...................................................................... 14

*McGill v. Shugarts*, 58 Wn.2d 203 (1961) ......................................................................... 28

*Middleton v. Middleton*, Pierce Cty. Sup. Ct. No. 27389 (Aug. 2, 1909) .......................... 15

*N. Ctys. Inv. Trust v. Enyard*, 24 Wash. 366 (1901) ......................................................... 21

*N. Pac. Ry. Co. v. Tacoma Junk Co.*, 138 Wash. 1 (1926) .................................................. 7

*Pennsylvania Transp. Auth. v. CSX Transp.*, 2005 WL 3597715 (E.D. Pa. Dec. 21, 2005) ............. 12

*Preseault v. Interstate Commerce Commission*, 494 U.S. 1 (1990) ...................................... 6

*Preseault v. United States*, 100 F.3d 1525 (Fed. Cir. 1996) ................................................ 9

*Ray v. King Cty.*, 120 Wash. App. 564 (2004) ............................................................... 2, 10

*Roeder Co. v. Burlington N., Inc.*, 105 Wn.2d 567 (1986) ........................................... 20, 28

*Rojsza v. City of Ferndale*, 2013 WL 5945808 (W.D. Wash. Nov. 5, 2013) ....................... 26

*Sammamish Homeowners v. Cty. of King*, 2015 WL 3561533 (W.D. Wash. June 5, 2015)  26, 27, 28

*Scramlin v. Warner*, 69 Wn.2d 6 (1966) ........................................................................... 23

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

*United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629 (9th Cir. 2012)................................ 26

*Washington Sec. & Inv. Corp. v. Horse Heaven Heights, Inc*., 132 Wash. App. 188 (2006) ................................................................................................................................... 9

*Yakima Valley Canal Co. v. Walker,* 76 Wash.2d 90 (1969) ...................................... 25

**Statutes**

RCW 7.28.070 ........................................................................................... 23, 24, 25

The National Trails System Act, 16 U.S.C. § 1247(d)......................................... 1, 3, 6

The Valuation Act of 1913, Pub. L. No. 62-400, § 19(a), 37 Stat. 701 (1913)........................... 11, 12

**Other Authorities**

D. Wright, *Doing A Double Take: Rail-Trail Takings Litigation in the Post-Brandt Trust Era*, 39 Vt. L. Rev. 703 (2015)........................................................................ 8

D. Wright, *Rails-to-Trails: Conversion of Railroad Corridors to Recreational Trails*, Powell on Real Property, Vol. 11. § 78A.06(2)(6) (2007)....................................... 3

*The Burlington N. & Santa Fe Ry. Co.-Abandonment Exemption-in King Cty., WA*, AB-6 (SUB 380X), 1998 WL 638432 (S.T.B. Sept. 16, 1998) ............................................. 5, 6

*The Land Conservancy of Seattle & King Cnty.-Abandonment Exemption-in King Cnty., Washington*, No. AB-508X, 1997 WL 450377 (STB, Aug. 11, 1997) ........................... 2

*The Land Conservancy of Seattle & King Cty.-Abandonment Exemption-in King Cty., WA*, No. AB-508X, 1997 WL 359085 (June 23, 1997) .................................................. 4

*The Land Conservancy of Seattle & King Cty.-Abandonment Exemption-in King Cty., WA*, No. AB-6 (SUB 380X), 1998 WL 638432 (Sept. 16, 1998).................................... 4

*Unif. Sys. of Records of Prop. Changes for R.R. Companies*, Ex Parte No. 512, 1992 WL 204321 (ICC Aug. 18, 1992)............................................................................ 12

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1    **I.      INTRODUCTION**

2          The current case represents yet another chapter in the "highly contentious matter" that is the

3    "disposition of the Redmond–Issaquah [railroad] line."  *Redmond-Issaquah R.R. Pres. Ass'n v.*

4    *Surface Transp. Bd.*, 223 F.3d 1057, 1058 (9th Cir. 2000).  Because the East Lake Sammamish Rail

5    Corridor (the "Corridor") is "railbanked" under the Trails Act, 16 U.S.C. § 1247(d) (the "Trails Act"),

6    Plaintiffs' efforts to truncate King County's property rights and trail rights lack any legal basis.

7    Plaintiffs are merely attempting a land grab against a well-established railroad corridor[1] that is

8    currently used for public trails.

9          The Court should grant summary judgment to King County, rejecting Plaintiffs' declaratory

10   judgment claim and granting King County's counterclaims for quiet title and declaratory judgment.

11   Specifically, the Court should rule that:  (1) Railbanking the Corridor under the Trails Act preserved

12   all property rights formerly held by the Burlington Northern and Santa Fe Railroad ("BNSF") and

13   authorized trail use; (2) King County currently holds all of BNSF's property rights in the Corridor,

14   as well as the trail rights created by the Trails Act; (3) In the portions of the Corridor where it holds

15   a "railroad easement," King County is entitled to the exclusive use and possession of the area on,

16   above, and below the surface of the Corridor for railroad purposes and incidental uses permitted by

17   Washington law, including use as a recreational trail; (4) King County owns the portion of the

18   Corridor next to the Hornish Plaintiffs in fee; (5) Except where narrowed by prior transactions, King

19   County owns a one hundred foot railroad easement next to the remaining Plaintiffs as reflected in

20   1895 assessor records, 1908 probate deeds, 1917 ICC Valuation Maps ("1917 Val Maps") and over

21   125 years of consistent practice; (6) Even if King County had not already acquired a one hundred

22   foot Corridor from BNSF, it acquired the same through operation of RCW 7.28.070; and (7) Plaintiffs

23

24   ---
     [1] At the same time that Plaintiffs are challenging King County's property rights in the Corridor, several of the Plaintiffs are seeking substantial compensation from the United States under the Tucker Act, arguing that the Trails Act's preservation of *these same rights* violated the Takings Clause of the Fifth Amendment.  *See Beres et al. v. United States*,

25   No. 03-785L (Fed. Cl.).

KING COUNTY'S MOTION FOR SUMMARY          **Daniel T. Satterberg**, Prosecuting Attorney
JUDGMENT – Page 1                          CIVIL DIVISION, Litigation Section
No. 2:15-cv-00284                          900 King County Administration Building
                                           500 Fourth Avenue
                                           Seattle, Washington 98104
                                           (206) (296-8820 Fax (206) 296-8819

1  lack standing under Washington's centerline presumption doctrine to challenge King County's

2  ownership interests in the Corridor.

3  **II.     STATEMENT OF FACTS**

4         **The Seattle, Lake Shore & Eastern Railway Assembles the Corridor.**  In 1885, a group of

5  Seattle businessmen founded the Seattle, Lake Shore & Eastern Railway Company (the "SLS&E").[2]

6  The SLS&E began to assemble the Corridor along the sparsely populated eastern shoreline of Lake

7  Sammamish.  SLS&E assembled its Corridor through a combination of federal land grants under the

8  General Railroad Right of Way Act of 1875, deeds from homesteaders, and adverse possession.  *See,*

9  *e.g.*, Map of the SLS&E, Exhibit A to Declaration of David Hackett.  As such, the Corridor contains

10 a mix of property owned as easements and fee simple, depending on the terms of the original

11 conveyance.  *See Beres v. United States*, 104 Fed. Cl. 408, 412 (2012).  Due to subsequent property

12 transactions by the Railroad, the Corridor now "varies in width from approximately fifty feet to two

13 hundred feet or more."  *The Land Conservancy of Seattle & King Cnty.-Abandonment Exemption-in*

14 *King Cnty., Washington*, No. AB-508X, 1997 WL 450377, at *1 (STB, Aug. 11, 1997).

15        **The Hilchkanum Deed.**  The Hornish Plaintiffs own property adjacent to portions of the

16 Corridor that were acquired by the SLS&E through a quit claim deed from homesteader William

17 Hilchkanum and his wife.  Declaration of Robert Nunnenkamp ¶ 13.  The May 9, 1887 "Hilchkanum

18 Deed" conveyed a fee simple interest to the SLS&E.  Nunnenkamp Decl. Ex. E; *King County v.*

19 *Rasmussen*, 299 F.3d 1077, 1080 (9th Cir. 2002) (Hilchkanum Deed alienated fee simple estate under

20 Washington law); *Ray v. King Cty.*, 120 Wash. App. 564, 580 (2004) (same); *but see Beres v. United*

21 *States*, 97 Fed. Cl. 757, 803 (Fed. Cl. 2011) (declining to follow Ninth Circuit and Washington

22 precedent).  When Hilchkanum eventually sold the remainder of his property, he specifically

23 excluded the Corridor from the property descriptions.  Nunnenkamp Decl. ¶ F.

24

25 _____

[2] After a series of mergers and acquisitions, the SLS&E eventually became part of BNSF.  The resulting company is sometimes referred to herein as the "Railroad."

KING COUNTY'S MOTION FOR SUMMARY
JUDGMENT – Page 2
No. 2:15-cv-00284

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1      **The Adverse Possession Areas.**  The remaining Plaintiffs—Tracy and Barbara Neighbors,

2    Arul Menezes and Lucretia Vanderwende, Lake Sammamish 4257 LLC, Herbert and Elynne Moore,

3    and Eugene and Elizabeth Morel—own property next to portions of the Corridor that were allegedly

4    established through adverse possession.[3]  The original owner of the property surrounding these

5    portions of the Corridor was the Northern Pacific Railroad, through an 1864 land grant from the

6    United States.  Nunnenkamp Decl. Ex. G.  The SLS&E completed construction of its tracks in March

7    1888.  Hackett Decl. Ex. B.  Just over a year later, on Aug. 26, 1889, the Northern Pacific conveyed

8    its property to Samuel Middleton.  Nunnenkamp Decl. Ex. H.  The deed from the Northern Pacific to

9    Mr. Middleton makes no mention of the Corridor, but contemporaneous tax assessor rolls excluded

10   a 100 foot Corridor from Mr. Middleton's property beginning in 1895.  *Id.*  Following

11   Mr. Middleton's death, the land that he owned adjacent to the Corridor passed to his heirs through a

12   1909 probate action in Pierce County Superior Court and expressly excluded the railroad Corridor.

13   Declaration of David Hackett, Ex. C at 4, 8.

14      **BNSF Sells Its Property Rights in the Corridor to The Land Conservancy ("TLC").**  In

15   early 1997, BNSF conveyed its ownership interest in the Corridor to TLC by Quit Claim deed.

16   Nunnenkamp Decl. Ex. I. The deed contained a detailed description of the property being transferred

17   and was duly recorded.  *Id.*

18     The Trails Act provides that a railroad or property holder may "railbank" a corridor to

19   preserve it for future railroad use and allow interim public trail use.  *See* 16 U.S.C. § 1247(d).  On

20   June 11, 1997, TLC initiated railbanking by petitioning the Surface Transportation Board ("STB") to

21   abandon the use of the Corridor for active rail service.  *The Land Conservancy of Seattle & King Cty.-*

---

[3] Many historical deeds associated with railroad corridors have been lost to time.  "In many instances across the country, courthouses burned or were flooded, railroads were bought out and their records lost, or landowners were unavailable or unwilling to negotiate private deeds to transfer corridor land. . . . Thus, in many cases, the inability to locate a source deed or court order should not necessarily indicate that the railroad did not have one; rather, it more likely indicates that it was destroyed or is otherwise buried in a warehouse with inadequate tracking."  D. Wright, *Rails-to-Trails: Conversion of Railroad Corridors to Recreational Trails*, POWELL ON REAL PROPERTY, Vol. 11 § 78A.06(2)(6) (2007).

KING COUNTY'S MOTION FOR SUMMARY
JUDGMENT – Page 3
No. 2:15-cv-00284

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1  *Abandonment Exemption-in King Cty., WA*, No. AB-508X, 1997 WL 359085, at *1 (June 23, 1997).

2  The petition included King County's Statement of Willingness to Assume Financial Responsibility

3  as the interim trail sponsor under the Trails Act. *The Land Conservancy of Seattle & King Cty.-*

4  *Abandonment Exemption-in King Cty., WA*, No. AB-6 (SUB 380X), 1998 WL 638432, at *1 (Sept.

5  16, 1998).

6        On September 16, 1998, the STB issued its Notice of Interim Trail Use ("NITU") in order to

7  facilitate railbanking and interim use of the Corridor as a recreational trail under the Trails Act. *Id.*

8  In accord with the NITU, King County and TLC reached an agreement where King County would

9  serve as the trail sponsor. As part of this arrangement, in September 1998, King County acquired all

10  of TLC's ownership interests in the portions of the Corridor that are adjacent to Plaintiffs' properties.

11  Nunnenkamp Decl. Ex. J. This transaction was also by Quitclaim Deed and included a detailed

12  description of the property; it was duly recorded. *Id.*

13        Since acquiring the Corridor, King County has constructed a soft surface public trail. It is

14  now in the process of constructing a paved trail along the full length of the Corridor.

15  **III.  ISSUES**

16       1.  Where the Railroad held a "railroad easement" in the adverse possession areas of the

17  Corridor, is King County—due to its status as the Railroad's successor and the effect of railbanking—

18  entitled to the exclusive use and possession of the area on, above, and below the surface of the

19  Corridor for railroad purposes, trail purposes and incidental uses permitted by Washington law? Yes.

20       2.  Does King County possess a fee interest in the portions of the Corridor adjacent to the

21  property of the Hornish Plaintiffs? Yes.

22       3.  Are the boundaries of the adverse possession areas of the Corridor one hundred feet

23  wide, except where the Railroad narrowed the Corridor through prior property transactions? Yes.

24       4.  Do Plaintiffs lack the Article III standing required to challenge King County's

25  property interests in the Corridor under Washington's centerline presumption? Yes.

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

IV.     ARGUMENT

    A.     **KING COUNTY IS ENTITLED TO SUMMARY JUDGMENT BECAUSE IT HOLDS A VALID RAILROAD EASEMENT AND TRAIL RIGHTS.**

Where King County holds an easement in the Corridor, it is entitled to summary judgment as the successor in interest to all of BNSF's property rights and the trail sponsor under the Trails Act. Plaintiffs seek a declaratory judgment that BNSF originally acquired only "a surface easement for railroad purposes over and through the adjacent landowners' land," and that "King County only acquired an easement for recreational trail purposes by and through the Trails Act with preservation of the right-of-way only for future railroad purposes and uses through railbanking."  Am. Compl. ¶¶ 2, 12.  A string of recent rulings in this District has confirmed that Plaintiffs' understanding of the Trails Act is incorrect.  In fact, King County acquired the exact same interest held by the Railroad in any easement areas:  a "railroad easement" that entitles King County to the exclusive use and possession of the area on, above, and below the surface of the Corridor for railroad purposes, trail purposes and incidental uses permitted by Washington law.  *See Kaseburg v. Port of Seattle,* No. C14-0784-JCC, 2015 WL 4508790, at *2 (W.D. Wash. July 24, 2015).

    *1.     King County Is The Successor In Interest To All BNSF's Property Rights In The Corridor And Is The Trail Sponsor Under The Trails Act.*

Through a series of quit claim deeds, King County acquired all of BNSF's property interests in the Corridor.  BNSF, as the successor in interest to the SLS&E, first conveyed its property interests in the Corridor to TLC via a quit claim deed on April 23, 1997.  Nunnenkamp Decl. Ex. I.  On September 16, 1998, the STB issued a Notice of Interim Trail Use allowing use of the railbanked Corridor as a trail.  *The Burlington N. & Santa Fe Ry. Co.-Abandonment Exemption-in King Cty., WA*, AB-6 (SUB 380X), 1998 WL 638432, at *1.  TLC then conveyed the property it had acquired from BNSF to King County via a quit claim deed on September 18, 1998.  Nunnenkamp Decl. Ex. J.

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1    The legal descriptions in both deeds describe the Corridor as one hundred feet wide in the segments

2    adjacent to the Plaintiffs' properties, except where it was narrowed by prior property transactions.[4]

3                    *2.    The Trails Act Preserves All Of BNSF's Property Rights In The Corridor.*

4            The Trails Act expressly preserves a railroad's property rights in a railbanked corridor.  The

5    plain language of the statute states that because of the "national policy to preserve established railroad

6    rights-of-way for future reactivation of rail service . . . interim use shall not be treated, for purposes

7    of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes."

8    16 U.S.C. § 1247(d).  In *Preseault*, the Supreme Court also confirmed that the Trails Act "prevent[s]

9    property interests from reverting under state law."  *Preseault v. Interstate Commerce Commission*,

10   494 U.S. 1, 8 (1990).  Finally, the STB has itself acknowledged that any easements are preserved by

11   the NITU for the Corridor, as "[i]nterim trail use/rail banking is subject to the future restoration of

12   rail service."  *The Burlington N. & Santa Fe Ry. Co.-Abandonment Exemption-in King Cty., Wa*, AB-

13   6 (SUB 380X), 1998 WL 638432, at *2.  Thus Congress, the Supreme Court, and the STB have all

14   recognized that railbanking preserves railroad easements that otherwise would extinguish after

15   cessation of railroad use.

16           Judge Coughenour recently confirmed—in nearly identical litigation filed by Plaintiffs' same

17   attorneys on behalf of homeowners adjacent to the Eastside Rail Corridor—that the Trails Act and

18   Washington law provide King County with exclusive control of a railbanked corridor.  *See Kaseburg*,

19   2015 WL 4508790, at *3.  Applying the Supreme Court's "landmark" decision in *Preseault*, the Court

20   held "that the Trails Act preempts abandonment and reversion" under state law, "and instead 'allows

21   a railroad to cease operating a line for an indefinite period of time while preserving the rail corridor

22   for possible reactivation of service in the future.'"  *Id.* at *3 (citing 494 U.S. at 6).

23

---

24   [4] For example, the Corridor is fifty wide adjacent to the Morel Plaintiffs' property and approximately seventy-five feet
     wide adjacent to the Menezes and Vanderwende Plaintiffs' property, due to prior transactions with BNSF.  Nunnenkamp
25   Decl. ¶¶ 21, 23-24.

KING COUNTY'S MOTION FOR SUMMARY
JUDGMENT – Page 6
No. 2:15-cv-00284

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

The Court explicitly rejected the homeowners' argument that "[p]reserving . . . for future reactivation . . . mean[s] something akin to resurrecting in the case of / contingent upon potential future reactivation." *Id.* To the contrary, "all courts presented with the issue have held that the Trails Act preserves railroad easements and that a trail sponsor may own and exercise the rights inherent to the railroad easement." *Id.* (citing *Illig v. United States*, 58 Fed. Cl. 619, 631 (2003); *Geneva Rock Products, Inc. v. United States*, 107 Fed. Cl. 166, 168 (2012); *Barclay v. United States*, 443 F.3d 1368, 1374 (Fed. Cir. 2006)). "It is simply true as a matter of law that the Trails Act preempts state law and preserves railroad easements despite a discontinuance in railroad use, while permitting the addition of recreational trail use to the easement." *Id.*

This well-reasoned precedent is equally applicable here. This Court should also hold as a matter of law that the Trails Act preserved all of BNSF's interests in the Corridor, which have been transferred to King County.

> 3.   *A Railroad Easement Under Washington Law Provides King County With The Right To Exclusive Use And Possession.*

In the areas of the Corridor where King County holds a railroad easement, such an easement results in "exclusive use, possession, and control of the land, and the owner of the fee has no right to use, occupy, or interfere with the same in any manner whatever." *N. Pac. Ry. Co. v. Tacoma Junk Co.*, 138 Wash. 1, 6 (1926) (citations omitted). A railroad easement "is a very substantial thing, more than a mere right of passage and more than an ordinary easement." *Hanson Indus., Inc. v. Cty. of Spokane*, 114 Wash. App. 523, 528 (Div. 3, 2002). "It is an easement with the substantiality of a fee and the attributes of a fee, perpetuity and exclusive use and possession; also the remedies of a fee." *Id.*

Applying this long-settled Washington law, Judge Coughenour found it "well established that a railroad easement grants the easement holder 'exclusive control of all the land within the lines of its roadway.'" *Kaseburg v. Port of Seattle*, 2015 WL 6449305, at *5 (W.D. Wash. Oct. 23, 2015).

KING COUNTY'S MOTION FOR SUMMARY
JUDGMENT – Page 7
No. 2:15-cv-00284

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1   Despite Plaintiffs' assertions that King County's easements may be used only as a surface easement

2   for a hiking and biking trail, "[t]he trail easements created by the Trails Act are just as exclusive as

3   the coexisting railroad easements." *Id.* Therefore, "whoever holds the Corridor Easements is granted

4   the exclusive use, possession, and control of the corridor." *Id.* at *5.

5          Judge Coughenour also recognized that King County's easements are not limited to a thin

6   strip along the surface of the Corridor, as the "rights necessary to operate, construct, and maintain a

7   railroad . . . includ[e] subsurface and aerial rights." *Id.* at *6. Railroads require flat gradients for

8   unrestricted operation, so their easements allow for tunnels, cuts, and bridges extending hundreds of

9   feet below and above the surface of the land. Declaration of Stephen M. Sullivan ¶¶ 2-16, Hackett

10  Decl. Ex. D; *see also* D. Wright, *Doing A Double Take: Rail-Trail Takings Litigation in the Post-*

11  *Brandt Trust Era*, 39 VT. L. REV. 703, 713 (2015) (railroads must "alter drainage, build permanent

12  structures, dig into the subsurface of the land for support, locate ballast for tracks and ties, or extend

13  into the airspace for all variety of structures from bridges to cranes to water towers"). As in *Kaseburg*,

14  the Court should hold that "the scope of trail easements under the Trails Act is coextensive with

15  railroad easements" and reject the Plaintiffs' attempts to restrict King County's control of the

16  Corridor's aerial and subsurface estates. 2015 WL 6449305, at *7.

17             4.      *Washington Law Provides King County With The Right To Incidental Uses Of*
18                     *The Railroad Corridor.*

19         Under Washington law, the scope of a railroad easement includes the right to use the property

20  for incidental activities. "[T]he incidental use doctrine . . . states that a railroad may use its easement

21  to conduct not only railroad-related activities, but also any other incidental activities that are not

22  inconsistent and do not interfere with the operation of the railroad." *Kershaw Sunnyside Ranches,*

23  *Inc. v. Yakima Interurban Lines Assoc.*, 121 Wn. App. 714, 731 (2004), *reversed on other grounds*,

24  156 Wash. 2d 253, 274 (2006) (citation omitted). A railroad easement includes the right to incidental

25

KING COUNTY'S MOTION FOR SUMMARY
JUDGMENT – Page 8
No. 2:15-cv-00284

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1    uses. *See also Washington Sec. & Inv. Corp. v. Horse Heaven Heights, Inc.*, 132 Wash. App. 188,

2    201 (2006) (discussing Washington's incidental use doctrine).

3        Judge Coughenour also held that the incidental use doctrine provides King County with the

4    right to make incidental uses of a railroad corridor. "Because railroads are public highways under

5    Washington law, it follows that they also retain exclusive control over incidental uses." *Kaseburg*,

6    2015 WL 6449305, at *8 (citing *Lawson v. State*, 107 Wash.2d 444, 449 (1986)). Thus, because "the

7    Trails Act creates trail easements whose scope is identical to that of the railroad easements they

8    supplement . . . [i]t does not bar incidental uses that are consistent with trail use and the operation of

9    a railroad." *Id.*  For these reasons, the Court should grant summary judgment holding that King

10   County's rights in areas of the Corridor where it holds a railroad easement include all incidental uses

11   permitted by Washington law.

12   **B.    KING COUNTY IS ENTITLED TO SUMMARY JUDGMENT AGAINST THE**
         **HORNISH PLAINTIFFS BECAUSE THE COUNTY OWNS A FEE INTEREST**
13       **IN THE ADJACENT SEGMENT OF THE CORRIDOR.**

14       King County is entitled to summary judgment on its quiet title counterclaim against the

15   Hornish Plaintiffs because the Ninth Circuit has already held that King County owns the portion of

16   the Corridor adjacent to their property in fee.[5]  In *Rasmussen*, 299 F.3d at 1080, which was filed by

17   other homeowners along the same part of the Corridor as the Hornish Plaintiffs, the Ninth Circuit

18   quieted titled and granted a declaratory judgment to King County, holding that it acquired a fee

19   interest in all portions of the Corridor originally derived from the Hilchkanum Deed. *Id.* at 1080.

20   After a thorough analysis of the Hilchkanum Deed, the Ninth Circuit held that "[t]he language of the

21   deed, the behavior of the parties, and the circumstances converge to show the Hilchkanums' intent to

22

23   _____

     [5] Where King County holds the Corridor in fee, it is entitled to summary judgment because it enjoys all the rights of a fee
24   owner, and Plaintiffs have no colorable claim to those portions of the Corridor. *See Preseault v. United States*, 100 F.3d
     1525, 1533 (Fed. Cir. 1996) ("Clearly, if the Railroad obtained fee simple title to the land over which it was to operate,
25   and that title inures, as it would, to its successors, the Preseaults today would have no right or interest in those parcels
     and could have no claim related to those parcels for a taking.").

KING COUNTY'S MOTION FOR SUMMARY
JUDGMENT – Page 9
No. 2:15-cv-00284

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

convey a fee simple." *Rasmussen*, 299 F.3d at 1088 (quoting *King Cty. v. Rasmussen*, 143 F. Supp. 2d 1225, 1230-31 (W.D. Wash. 2001)). Therefore, King County, as the SLS&E's successor, holds the same "title to the right of way carved from the Hilchkanum property." *Rasmussen*, 299 F.3d 1081.

In another quiet title case brought by landowners adjacent to the Hornish Plaintiffs, the Washington Court of Appeals again held that the same Hilchkanum deed conveyed a fee interest to King County. *Ray*, 120 Wash. App. at 564. After another careful analysis of the deed, the court found "the contrast between the language in the Hilchkanum deed conveying the right of way and the language conveying the right to cut dangerous trees on land adjacent to the right of way to be compelling evidence that the first conveyed a fee interest and the second an easement." *Id.* at 589. Likewise, "the habendum clause of the Hilchkanum deed contains no limiting language," which again "supports the conclusion that the granting clause conveyed fee title." *Id.* at 580.

It is undisputed that the Hornish property, like the properties at issue in *Rasmussen* and *Ray*, is adjacent to the segment of the Corridor King County acquired through the Hilchkanum Deed. Nunnenkamp Decl. ¶ 12; *see also* Ex. B1 to Am. Compl., Dkt. No. 31-2, at 4-5 (Aug. 14, 2015) (tracing chain of title for the Hornish property to William Hilchkanum). Because King County owns this segment of the Corridor in fee, it is entitled to summary judgment quieting title against the Hornish Plaintiffs and dismissal of their cause of action.[6]

---

[6] Plaintiffs will doubtless rely on the United States Court of Claims' determination that the Hilchkanum Deed conveyed only an easement to the Corridor. *Beres*, 97 Fed. Cl. at 803. In *Beres*, the Court of Claims acknowledged that it rejected the reasoning in *Rasmussen* and *Ray*, because neither decision was "precedential for this court." *Id.* at 798. Of course, the Ninth Circuit's decision in *Rasmussen* is binding precedent here, as is the decision in *Ray*. *See Kaseburg v. Port of Seattle*, No. 2:14-cv-00784-JCC, slip op. at 8, Dkt. No. 91 (April 23, 2015) (although Ninth Circuit decisions are not binding on the Court of Claims, neither are Court of Claims decisions binding on the Western District of Washington); *In re Watts*, 298 F.3d 1077, 1083 (9th Cir. 2002) ("[T]he federal courts must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently.").

KING COUNTY'S MOTION FOR SUMMARY
JUDGMENT – Page 10
No. 2:15-cv-00284

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1

2

**C.**   **KING COUNTY IS ENTITLED TO SUMMARY JUDGMENT AGAINST THE REMAINING PLAINTIFFS, BECAUSE THE RAILROAD EASEMENT ESTABLISHED IN THE ADVERSE POSSESSION AREAS OF THE CORRIDOR IS ONE HUNDRED FEET WIDE.**

3

4

5

6

7

8

9

10

11

King County is entitled to summary judgment rejecting the remaining Plaintiffs' claims and granting the County's counterclaims because the railroad easement adjacent to their properties is one hundred feet wide (subject to prior specific transactions). The non-Hornish Plaintiffs acknowledge that the SLS&E acquired a prescriptive easement in the portions of the Corridor adjacent to their lots. *See* Complaint at 2. Nevertheless, despite over 125 years of use, King County assessor records, STB agency records, acquiescence by Plaintiffs (or their predecessors in interest), and recorded deeds, Plaintiffs now claim that the Corridor is limited to the narrow width (approximately twelve to fifteen feet) where the SLS&E laid its ballast and track. The Court should reject these Plaintiffs' attempt to revise the long-settled dimensions of the Corridor.

12

13

    1. *Federal ICC/STB Records Confirm That The Railroad Originally Acquired A One Hundred Foot Wide Corridor.*

14

15

16

17

18

Official agency records from the Interstate Commerce Commission ("ICC"),[7] known as the 1917 Val Maps, confirm that BNSF originally acquired a one hundred foot Corridor in the areas adjacent to Plaintiffs' properties. Nunnenkamp Decl. ¶¶ 26-29; *id*. Ex. R. King County owns the same area of the Corridor today (less intervening land transactions by BNSF). Nunnenkamp Decl. Exs. I & J.

19

20

21

22

23

The Valuation Act of 1913 required the ICC's Bureau of Valuation to "investigate, ascertain, and report the value of all the property owned or used by every common carrier," in order to measure the railroad property subject to regulation, ratemaking and taxation. Pub. L. No. 62-400, § 19(a), 37 Stat. 701, 701 (1913) (former 49 U.S.C. § 10781), Hackett Decl. Ex. E. The Valuation Act commanded the ICC "to make an inventory which shall list the property of every common carrier

24

25

---

[7] The ICC was the predecessor to the Surface Transportation Board ("STB").

KING COUNTY'S MOTION FOR SUMMARY
JUDGMENT – Page 11
No. 2:15-cv-00284

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1  subject to the provisions of this Act in detail, and show the value thereof as hereinafter provided, and

2  shall classify the physical property, as nearly as practicable." *Id.* The result "was a monumental

3  undertaking, with approximately 1,500 employees counting every item of road property and all pieces

4  of equipment for the entire national railroad system." *Unif. Sys. of Records of Prop. Changes for*

5  *R.R. Companies*, Ex Parte No. 512, 1992 WL 204321, at *1 (ICC Aug. 18, 1992).

6  During this inventory, "valuation engineers assigned to the district offices of the [ICC's]

7  Bureau of Valuation" prepared Valuation Maps with pain-staking detail that, "when submitted to

8  Bureau headquarters in Washington, . . . furnished technical and pictorial data need[ed] for use in

9  determining valuation rates on carriers subject to ICC jurisdiction." D. Pfeiffer, NAT'L ARCHIVES

10  AND RECORDS ADMIN., *Records Relating to North Am. R.R.,* Reference Info. Paper No. 91, at III.82(1)

11  (2001), Hackett Decl. Ex. F. These records document "the land owned by a railroad and how it was

12  acquired, the land adjacent to railroad property, and the financial history of the railroad from its

13  earliest operations to the date of basic valuation." *Id.*

14  The 1917 Val Maps document and record the Corridor boundaries. Because the maps served

15  as the baseline for the assessment of taxes, railroads had no incentive to claim any more property than

16  was necessary for their operations. As a result, Valuation Maps are now routinely used to determine

17  the boundaries of railroad corridors. *See, e.g., Alameda Corridor Transp. Auth. v. Stewart Title Guar.*

18  *Co.*, 119 F. App'x 111, 112 (9th Cir. 2004) (relying on Valuation Maps as evidence of corridor

19  boundaries); *Se. Pennsylvania Transp. Auth. v. CSX Transp.*, 2005 WL 3597715, at *3 (E.D. Pa. Dec.

20  21, 2005) (same); *Dugle v. Norfolk S. Ry. Co.,* 2010 WL 2710489, at *6 (E.D. Ky. July 7, 2010)

21  (same); *Brown v. Alabama Great S. R. Co.*, 544 So. 2d 926, 929 (Ala. 1989) (same); *Illig v. United*

22  *States*, 58 Fed. Cl. 619, 629 (2003) (same); *Jackson v. United States*, 122 Fed. Cl. 376, 378 (2015)

23  (same); *City of Jersey City, Rails to Trails Conservancy, Pennsylvania R.R. Harsimus Stem*

24  *Embankment Pres. Coal., & New Jersey State Assemblyman Louis M. Manzo—Petition for*

25

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1   *Declaratory Order*, No. 34818, 2007 WL 4973945, at *6 n.6 (STB, Dec. 17, 2007) (same), *vacated*

2   *on other grounds*, *Consol. Rail Corp. v. Surface Transp. Bd.*, 571 F.3d 13, 18 (D.C. Cir. 2009).

3        The Valuation Map that the ICC prepared for the Corridor adjacent to Plaintiffs' properties

4   shows that the Railroad originally acquired 4.71 acres of land in the segment adjacent to the

5   Neighbors, Morel, and Menezes and Vanderwende Plaintiffs, Parcel 6, by way of adverse possession.

6   Nunnenkamp Decl. ¶ 27; *id.* Ex. R.  This segment of the corridor is 2,050 feet long.  *Id.*  Therefore,

7   the area and length indicate that the Corridor is approximately 100 feet wide.  *Id.*  The Valuation Map

8   also shows that the segment adjacent to Lake Sammamish 4257 LLC and the Moore Plaintiffs, Parcel

9   13, is 3.29 acres and 1,434.4 feet long.  *Id.* ¶ 28.  Based on the area and length of this segment, it is

10  also recorded as approximately 100 feet wide.  *Id.* ¶ 28.  Plaintiffs have no evidence that could dispute

11  this width.

12       The Plaintiffs themselves have acknowledged that the 1917 Val Maps show the location of

13  the Corridor assembled by the Railroad, which necessarily includes its width.  In a Fifth Amendment

14  takings case involving this same Corridor, the plaintiffs—including the Morel and Neighbors

15  Plaintiffs in this case—informed the court:

16              With respect to the location of Landowners' properties, the Land
17              Schedule which the Railroad filed with the Interstate Commerce
                Commission states that the railroad acquired the interest in that
                property by adverse possession. No documents have been found to
18              suggest otherwise. Thus, the parties agree that the Railroad acquired its
                interest in the right of way, either as an easement interest or a fee
19              interest, by adverse possession.

20  Stipulation of Issue and Facts, *Beres v. United States*, No. 03-785L, Dkt. No. 79, at 2 ¶ II.4 (Fed. Cl.

21  Nov. 1, 2006), Hackett Decl. Ex. G.  The boundaries recognized in the Valuation Maps have been

22  undisputed for nearly one hundred years.  Were there any argument to the contrary, Plaintiffs'

23  predecessors should have raised it over one century ago.

24

25

KING COUNTY'S MOTION FOR SUMMARY
JUDGMENT – Page 13
No. 2:15-cv-00284

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1              2.      *Records from the King County Assessor and Pierce County Superior Court*
                       *Confirm A One Hundred Foot Wide Corridor.*

2            Historical tax and probate records document a one hundred foot wide Corridor has existed for

3    well over one hundred years.  The SLS&E originally completed construction of the Corridor in March

4    of 1888.  Hackett Decl. Ex. B.  On August 26, 1889, after the Corridor began operation, Samuel

5    Middleton purchased the property that Plaintiffs (and their neighbors) now claim.  Nunnenkamp Decl.

6    Ex. H.  There is no evidence that Mr. Middleton ever complained about the Railroad's lack of proper

7    title, or objected to the SLS&E's operation through his land.[8]

8            To the contrary, the record suggests Mr. Middleton acquiesced in the SLS&E's operation of

9    the Corridor:  "An owner of land, who stands by and without protest sees a railroad constructed

10   thereon, is estopped thereafter to maintain an action in ejectment or a suit for injunction to prevent

11   the operation of the road."  *Kakeldy v. Columbia & P.S.R. Co*., 37 Wash. 675, 680 (1905).  While the

12   plaintiff in *Kakeldy* waited just twenty years to challenge a railroad's lack of title, Mr. Middleton's

13   successors have waited over a century.  *Id*.

14           Regardless of how the Railroad acquired the Corridor from Mr. Middleton, its width has been

15   reflected in the King County Assessor's records, without dispute, for over one hundred and twenty

16   years.  In 1891, the Assessor stated that Mr. Middleton owned 34.35 acres of property in Lot 2, which

17   eventually became the source of the parcels owned by the Neighbors, Morel, and Menezes and

18   Vanderwende Plaintiffs.[9]   Real Property Assessment and Tax Roll of King County (1891),

19   Nunnenkamp Decl. Ex. S.  In 1895, the Assessor recorded that Mr. Middleton owned 29.5 acres in

20   Lot 2, which it now described as "Lot 2 Less RR."  Real Property Assessment and Tax Roll of King

21   County (1895), Nunnenkamp Decl. Ex. T.  The reduction in his holdings between 1891 and 1895

22

23   [8] Mr. Middleton's decision to purchase property adjacent to the fledgling Corridor likely reflects the belief that "steam
     railroads, reaching out to tracts of land which would otherwise be inaccessible, largely increase the value of all property

24   in their immediate vicinity, and add far more to the values of lots and blocks than is possible to be added by the widening
     of a street."  *Lewis v. City of Seattle*, 5 Wash. 741, 752 (1893).

25   [9] The full legal description for this parcel was Lot 2 of Section 7, Township 24 North, Range Six East of the Willamette
     Meridian.  Nunnenkamp Decl. ¶ 30.

KING COUNTY'S MOTION FOR SUMMARY                          **Daniel T. Satterberg**, Prosecuting Attorney
JUDGMENT – Page 14                                        CIVIL DIVISION, Litigation Section
No. 2:15-cv-00284                                         900 King County Administration Building
                                                         500 Fourth Avenue
                                                         Seattle, Washington 98104
                                                         (206) (296-8820 Fax (206) 296-8819

1   reflects the creation of a 4.85 acre Corridor in Lot 2.  Nunnenkamp Decl. ¶ 31.  The area of Lot 2,

2   along with its length, indicates this segment of the Corridor is approximately one hundred feet wide.[10]

3   *Id*.  In 1900, the Assessor recorded that Mr. Middleton owned 29.53 acres in Lot 2, again described

4   as "Lot 2 less RR."  Real Property Assessment and Tax Roll of King County (1900), Nunnenkamp

5   Decl. Ex. U.  The difference from the area recorded in 1891 again confirms the creation of a one

6   hundred feet Corridor in Lot 2.  Nunnenkamp Decl. ¶ 32.

7        The Assessor Rolls confirm the Railroad also acquired a one hundred foot Corridor in Lot 3,

8   which became the source of the property owned by Lake Sammamish 4257 LLC and the Moore

9   Plaintiffs.[11]  In 1891, the Assessor stated that Mr. Middleton owned 16 acres of property in Lot 3.

10  Nunnenkamp Decl. Ex. S.  In 1895, the Assessor recorded that Mr. Middleton owned only 12.79

11  acres in Lot 3, which it now described as "Lot 3 less RR."  Nunnenkamp Decl. Ex. T.  The decrease

12  in Mr. Middleton's property between 1891 and 1895 reflects the creation of a 3.21 acre Corridor in

13  Lot 3.  Nunnenkamp Decl. ¶ 31.  This area and the length of Lot 3 indicate this segment of the

14  Corridor is approximately one hundred feet wide.  *Id*.  In 1900, the Assessor again recorded that

15  Mr. Middleton owned 12.79 acres of property in Lot 3, described as "Lot 3 less RR."  Nunnenkamp

16  Decl. Ex. U.  These records are also consistent with a one hundred foot Corridor.  Nunnenkamp Decl.

17  ¶ 32.

18       When Mr. Middleton died, his property was divided between his heirs in probate proceedings

19  in the Pierce County Superior Court.  The final order expressly excluded any interest in the Corridor

20  from the property conveyed to Mr. Middleton's heirs.  Final Judgment, *Middleton v. Middleton*,

21  Pierce Cty. Sup. Ct. No. 27389 (Aug. 2, 1909), Hackett Decl. Ex. C at 4, 8.

---

[10] Minor variations in these calculations reflect rounding error, imprecision in early surveying technology, and the fact that the Corridor is curved, rather than a precise rectangle.  Nunnenkamp Decl. ¶ 33.

[11] The full legal description for this parcel was "Lot 3 of Section 17, Township 24 North, Range Six East of the Willamette Meridian."  Nunnenkamp Decl. ¶ 30.

KING COUNTY'S MOTION FOR SUMMARY
JUDGMENT – Page 15
No. 2:15-cv-00284

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1  These records, distributed throughout the life of Mr. Middleton, confirm that he acquiesced

2  in the creation of a one-hundred foot Corridor adjacent to his land.  Plaintiffs cannot revise history to

3  suggest King County has lost its rights in the Corridor simply because the record of its creation cannot

4  be found.  To the contrary, the available record confirms that the parties have recognized, for well

5  over one hundred years, that the Corridor is one hundred feet wide.

6          **3.**     *The Actions Of Plaintiffs And Their Predecessors Confirm The Corridor Is*
   *One Hundred Feet Wide.*

7

8  Despite Plaintiffs' current claims that the corridor is twelve to fifteen feet wide, their prior

9  actions and those of their predecessors-in-interest confirm the one hundred foot Corridor described

10  in the 1917 Val Maps and other records.  Numerous Plaintiffs have sought, and received, permits

11  allowing them to make limited use of the Corridor, subject to the revocable permission of BNSF and

12  King County.  In these permits, Plaintiffs repeatedly signed and ratified their understanding both that

13  the Railroad and King County control the Corridor and that the width is substantially greater than

14  they claim today.

15      **The Morel Plaintiffs.**  The Morel Plaintiffs acquired their property from the parents of

16  Eugene Morel, who acknowledged that the Corridor was one hundred feet wide when they purchased

17  a small parcel from BNSF on May 23, 1996.[12]  Eugene Morel's parents, Angelina Rose Morel and

18  Stephen Louis Morel, purchased two narrows strips of land from the outside of the Corridor, each

19  twenty-five feet in width, leaving the Corridor fifty feet wide in the area adjacent to their property.

20  The quitclaim deed described this purchase as a "portion of [BNSF's] **100.0 foot wide** Snoqualmie

21  Branch Line right of way."  Quitclaim Deed, Nunnenkamp Decl. Ex. O (May 23, 1996) (emphasis

22  added).  The metes and bounds description in the quitclaim deed acknowledged the Corridor remained

23

24  ---
   [12] This parcel was sold to Mr. Morel's parents before the Corridor was railbanked, so the parcel is not railbanked or

25  subject to the jurisdiction of the STB.  King County claims no interest in this small parcel, which is not relevant to this
   dispute.

KING COUNTY'S MOTION FOR SUMMARY
JUDGMENT – Page 16
No. 2:15-cv-00284

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

fifty feet wide after the Morel's purchase, as the conveyance was expressly "EXCEPTING THEREFROM, a strip of land **50.0 feet wide**, being 25.0 feet wide on each side, as measured at right angles and radially from the centerline of said Railroad Company's Main Track, as now located and constructed." *Id.* at 2 (emphasis added).

A year later, Plaintiff Eugene Morel acknowledged the Corridor remained fifty feet wide when he applied for a license from BNSF for permission to cross their property. Agreement for Private Crossing, Nunnenkamp Decl. Ex. D (Mar. 23, 1997). In the agreement, he "requested of [BNSF] permission to cross, for private purposes the rail corridor and tracks of [BNSF] . . . at the location and in the manner shown on the attached EXHIBIT 'A.'" *Id.* That exhibit, a map of the Corridor incorporated by reference, clearly labels the Corridor as fifty feet wide in the area Mr. Morel sought permission to cross. *Id.*

Plaintiff Eugene Morel also acknowledged in his license application that he needed BNSF's permission to cross property outside the narrow width of the tracks and ballast. *Id.* In the agreement, he requested "a non-exclusive license and permission to enter upon and cross [BNSF's] rail corridor and tracks." *Id.* at 1. Mr. Morel also acknowledged "that cables, pipelines, and other electric and/or fiber optic transmission lines may be on, about, along or under [BNSF's] property and [Mr. Morel] agrees that under no circumstances will [Mr. Morel] dig in or disturb the surface of [BNSF's] property." *Id.* at 3 ¶ 5. Finally, he agreed that the "[r]ights granted to [Mr. Morel] are subject and subordinate to the prior and continuing right and obligation of [BNSF] to use and maintain its entire rail corridor." *Id.* at 5 ¶ 1.

By purchasing fifty feet of width from the Railroad, the Morels acknowledged that the Railroad had originally acquired one hundred feet of width in the Corridor, which became fifty feet wide after their purchase. As a matter of long-settled Washington law, the Morels' prior purchase of a portion of the Corridor is inconsistent with their claim to control the entire Corridor now. *See City*

KING COUNTY'S MOTION FOR SUMMARY
JUDGMENT – Page 17
No. 2:15-cv-00284

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1    *of Port Townsend v. Lewis*, 34 Wash. 413, 418 (1904); *Jensen v. Compton*, 131 Wash. App. 1064, *3

2    (Div. 1, 2006) ("[O]ffering to purchase is wholly inconsistent with adverse possession.").

3    **The Neighbors Plaintiffs.**   The predecessors of the Neighbors Plaintiffs have repeatedly

4    acknowledged King County's interest in the one hundred foot wide Corridor.   On January 17, 2006,

5    one of their predecessors, Jean Guthrie, signed a written agreement admitting that she had built

6    numerous encroachments, including "steps, decking & [a] storage/cabana," that fell inside the one-

7    hundred foot Corridor belonging to King County, but outside the twelve to fifteen foot width now

8    asserted by the Plaintiffs.   Statement of Encroachment and Acknowledgement of County Interest,

9    Nunnenkamp Decl. ¶ 9; *id*. Ex. B at 3 (Jan. 17, 2006).   In exchange for a license allowing her to

10   continue using the Corridor temporarily, Ms. Guthrie explicitly acknowledged King County's

11   ownership of the area.   *Id*.   She also "agree[d] that [King County's] permission for continued

12   encroachment is subject to revocation at any time without prior notice and without cause."   *Id*.

13   Finally, Ms. Guthrie acknowledged that "the permittee and [her] successors, assigns or other persons

14   assuming in any way the permittee's interest in the property are also bound by the Statement of

15   Encroachment and any permit submitted in conjunction with this statement."   *Id*.   In exchange, Ms.

16   Guthrie received permission "to use a portion of the trail corridor as an ingress, egress, utility crossing

17   and to install and maintain a fence and recreational features" only for a period of up to ten years.   *Id*.

18   at 1.

19       Ms. Guthrie then sold her property to George and Kathleen Rumberger on March 20, 2006,

20   who eventually sold the property to the Neighbors Plaintiffs on June 27, 2011.   The Rumbergers again

21   acknowledged King County's control of the Corridor, applying for a special use permit "to construct

22   and maintain a 12' high retaining wall along the easterly portion of the current trail."   Special Use

23   Permit, Nunnenkamp Decl. Ex. C at 1 (January 9, 2007).   This retaining wall was inside the one

24   hundred foot Corridor owned by King County, but outside the twelve to fifteen foot width now

25   asserted by the Plaintiffs.   Nunnenkamp Decl. ¶ 10.   In exchange for a permit allowing their

KING COUNTY'S MOTION FOR SUMMARY
JUDGMENT – Page 18
No. 2:15-cv-00284

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1    encroachments to remain temporarily, the Rumbergers signed the same acknowledgement as Ms.

2    Guthrie, verifying the County's ownership of the Corridor.  *Id.* Ex. C at 6.

3        **The Menezes and Vanderwende Plaintiffs.**   The predecessor of the Menezes and

4    Vanderwende Plaintiffs, Lynn Goldsmith, also acknowledged that the Corridor is one hundred feet

5    wide in quiet title litigation that she filed against the Railroad, captioned *Goldsmith v. Burlington*

6    *Northern Railroad Co.*, King Cty. Sup. Ct. No. 96-2-24980-7.   In her Complaint, Ms. Goldsmith

7    claimed she had adversely possessed property from the Railroad, disputing the Railroad's "claim[]

8    that the right of way is 100 ft. in width – 50 ft. on each side of its centerline."  Compl., *Goldsmith,*

9    ¶ 2.3 (Sept. 24, 1996), Hackett Decl. Ex. H.  She then agreed to a joint stipulation settling her claims

10   in exchange for the transfer of a narrow strip of land from BNSF.[13]  By settling in exchange for a

11   strip of the Corridor, Ms. Goldsmith acknowledged that the remaining portion of the Corridor,

12   roughly seventy-five feet wide, remained in the possession of BNSF, and now King County.  Due to

13   privity of title, *res judicata* bars the Menezes and Vanderwende Plaintiffs from re-opening their

14   predecessor's claims to control additional portions of the Corridor.  *Cayward v. HSBC Bank USA,*

15   *Nat. Ass'n*, 2013 WL 392718, at *4 (W.D. Wash. Jan. 31, 2013) (J. Pechman).

16       The Menezes and Vanderwende Plaintiffs also acknowledged they do not control the Corridor

17   by applying for a permit from King County to allow use of "a portion of the trail corridor for an

18   ingress and egress for the delivery of construction materials and the maintenance of a retaining wall."

19   Special Use Permit, Nunnenkamp Decl. Ex. A at 2 (Apr. 10, 2002).  They memorialized, in writing,

20   their "understand[ing] that no further work, use, improvements or alterations of the corridor are

21   approved without advance written approval of K[ing] C[ounty] P[arks] S[ystem]."  *Id.* at 3 ¶ 15(e).

22   As with the other Plaintiffs, the Menezes and Vanderwende Plaintiffs sought permission from King

23

---

24   [13] Agreed Order Quieting Title, *Goldsmith* (Dec. 9, 1996), Hackett Decl. Ex. I.  The property that Ms. Goldsmith acquired from BNSF, which is not a true rectangle, is roughly twenty-five feet in width.  *Id.*  After the removal of this property, the Corridor remains approximately seventy-five feet wide in the segment adjacent to this property.  Nunnenkamp Decl.

25   ¶ 21.

KING COUNTY'S MOTION FOR SUMMARY
JUDGMENT – Page 19
No. 2:15-cv-00284

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1  County to construct features within the portion of the Corridor they now contend has always belonged

2  to them.  Nunnenkamp Decl. ¶ 8.  Their prior actions flatly contradict their current claims.

3  **Plaintiffs' Property Taxes.**  Plaintiffs' property taxes are based on a Corridor that is one

4  hundred feet wide (except near the Morel and Menezes and Vanderwende Plaintiffs due to their prior

5  transactions with BNSF).  As noted above, since 1895, the tax assessor has consistently excluded the

6  one hundred foot Corridor from the taxable land area of Plaintiffs and their predecessors in interests.

7  Nunnenkamp Decl. ¶¶ 30-33.  Consistent with this practice, the current King County assessor maps

8  also exclude the one hundred foot corridor from Plaintiffs' properties.  Nunnenkamp Decl. ¶¶ 34-36;

9  *id*. Exs. V-X.  Neither Plaintiffs nor their predecessors-in-interest have ever been charged or paid

10  property taxes within the Corridor.  There is no known record of any Plaintiff challenging their tax

11  assessments to claim that their properties are larger than assessed.  Nunnenkamp Decl. ¶ 37.

12        *4.   A One Hundred Foot Corridor Is Consistent With A Railroad's Operational*

13  *Needs.*

14  When assembling the Corridor, the SLS&E acquired the property that was necessary for its

15  operations.  Under long-established Washington law, the width of a rail or roadway acquired by

16  adverse possession or prescription is not confined to the width of the rails or the tracks, but is

17  determined by what is actually needed to support the Corridor.[14]  *See In re Extension of West*

18  *Marginal Way*, 186 P. 644, 646 (Wash. 1919) ("The right acquired by prescription and use carries

19  with it such width as is reasonably necessary for the public easement of travel, and the width must be

20  determined from a consideration of the facts and circumstances peculiar to the case.").

21  Consistent with the operational needs of railroads, Washington law recognizes that corridors

22  acquired by adverse possession extend beyond the portion in daily use.  *See, e.g., Dennis v. N. Pac.*

23  *Ry. Co.*, 20 Wash. 320, 334 (1898) ("It is a matter of common knowledge that the right of way of

24
25  [14] Washington law generally treats road and railroad corridors similarly.  *E.g. Roeder Co. v. Burlington N., Inc.*, 105 Wash.2d 567, 576 (1986) (applying highway presumption to railroad corridors).

KING COUNTY'S MOTION FOR SUMMARY
JUDGMENT – Page 20
No. 2:15-cv-00284

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

railroad companies is not limited to the amount of land actually occupied by their tracks.").  A railroad

requires more than the width of its tracks and ballast because:

> The uses for the right of way in connection with the operation of the railroad may be many. It may require a use for additional stations or side tracks. The company must so use its right of way as to reasonably prevent the communication of fires in the operation of its engines. Many of these uses, it will be observed, need not necessarily be made by the company when its line is first constructed.

*N. Ctys. Inv. Trust v. Enyard*, 24 Wash. 366, 370-71 (1901).

The width of the road as laid out and mapped is strong evidence of the width that is necessary

for its purpose.  *In re Extension of West Marginal Way*, 186 P. at 646 ("The county actually laid out

and surveyed a road sixty feet in width . . . and acquired by prescriptive right the whole of the sixty-

foot road, notwithstanding the fact that but a portion of thereof was actually used.").  The width of

the corridor is also shown by the conduct of the adjoining landowners.  *Id.* (noting a prior landowner's

petition to change the location of the road recognized the county claimed more width than was

actually used).  The width of the corridor is also determined by examining the width of the corridor

connecting to the sections without a deed.  *810 Properties v. Jump*, 170 P.3d 1209, 1217 (Wash. Ct.

App. 2007) (holding that a prescriptive easement was forty feet wide, despite testimony only ten to

fifteen feet was used, because "40 feet is the amount reasonably necessary to connect to the easement

in the south half," which was also forty feet wide); *accord Illig*, 58 Fed. Cl. at 629-30 (rejecting

argument that railroad "corridor runs at an even 100 feet in width for most of the length of the

Carondelet Branch but then abruptly narrows to thirty feet for the length of certain parcels for which

no specific deed can be found," because the law "disfavors bottlenecking").

Railroad corridors, by necessity, must be wider than the narrow area where the tracks are laid:

> Many railroad lines have a wider ROW than might appear to be used, but that does not mean that all of the property is not needed for rail operations . . . [E]xtra width on the sides of the track allows room to maintain or upgrade the track, to provide access to the line, to serve as a safety buffer, and to ensure that sufficient space is left available for

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1

2

3

> more tracks and other rail facilities to be added, as needed, as rail traffic changes and grows, among other uses. Thus, it cannot be said that property at the edge of a railroad's ROW is 'not needed for railroad transportation' just because tracks or facilities are not physically located there now.

4 *City of Creede, CO—Petition for Declaratory Order*, No. 34376, 2005 WL 1024483, at *6 (STB,

5 May 3, 2005) (citing *Midland Valley R.R. v. Jarvis*, 29 F.2d 539, 541 (8th Cir. 1928)); *see also Brown*

6 *v. Alabama Great South. R.R. Co.*, 544 So. 2d 926, 928 (Ala. 1989) (summarizing testimony of

7 railroad employees indicating that fifty foot railroad corridor was used for "drainage purposes, as

8 work area by the timber and surfacing crews when repairing track, for installing and removing

9 crossties, for laying rail, and for ditching and storing debris removed from the roadbed so that it would

10 not wash back on the tracks").

11       Indeed, in previous litigation, BNSF explained that the one-hundred foot width of the Corridor

12 serves as a necessary "safety buffer to ensure minimum setbacks between freight trains and residential

13 development, to prevent nearby construction and development activities that could undermine the

14 stability of the steep slopes above and below the tracks, and to provide access for maintenance

15 activities, such as tie replacement, that require significant clearance on one or both sides of the track."

16 Declaration of Mike Nuorala ¶ 8, Hackett Decl. Ex. J.  Further, based on railroad track standards and

17 engineering specifications for Class I railroads such as BNSF, "to reactivate the East Lake

18 Sammamish Trail corridor for interstate freight service would require a corridor from 59 feet 8.5

19 inches wide, to 96 feet 8.5 inches wide."  Sullivan Decl. ¶ 4, Hackett Decl. Ex. D.  This width is

20 necessary because railroad operations require space between each of the rails of the track, side

21 clearance, drainage of the slope, a drainage ditch, and access for maintenance and emergencies.  *Id.*

22 ¶¶ 5-8.  Sufficient width for corridor drainage is the most important factor for maintenance of the

23 railroad tracks.  *Id.* ¶ 8.  Adequate access for emergency responses, including derailments, is also

24 critical.  *Id.* ¶ 9.  As such, based on the requirements of railroad operations, a one hundred foot width

25 is necessary to serve the purpose of the Corridor.

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1

            5.      *Even If The SLS&E Had Not Acquired A One Hundred Foot Wide Corridor, King County Has Acquired One Hundred Feet of Width Through Operation of RCW 7.28.070.*

2

3        Through its quit claim deeds from BNSF, King County acquired the same one hundred feet

4 of Corridor (less prior BNSF property transactions) that was assembled by the Railroad.  But even

5 were this not the case, King County would have subsequently acquired one hundred feet of width

6 solely through operation of RCW 7.28.070.  This statute is one of several "formulated at law for the

7 purpose of, among others, assuring maximum utilization of land, encouraging the rejection of stale

8 claims and, most importantly, quieting titles."  *Chaplin v. Sanders*, 100 Wn.2d 853, 859-60 (1984).

9 Often referred to as Washington's "payment of taxes" statute, RCW 7.28.070 provides that:

10        Every person in actual, open and notorious possession of lands or
tenements under claim and color of title, made in good faith, and who

11        shall for *seven successive years* continue in possession, and shall also
during said time pay all taxes legally assessed on such lands or

12        tenements, shall be held and adjudged to be the legal owner of said
lands or tenements, *to the extent and according to the purport of his or*

13        *her paper title.*

14 (Emphasis added).

15        The Washington Supreme Court provided a detailed examination of this statute's

16 requirements in *Scramlin v. Warner*, 69 Wn.2d 6, 8 (1966).  "Color of title" exists when a deed

17 "sufficiently describes the property in question and purports to convey it to the respondents."  *Id.* at

18 10.  A party obtains color of title to any property they receive through a quit claim deed.  *Id.*  The act

19 of recording a deed "dispenses with the need for other proof of a hostile or adverse claim."  *Fies v.*

20 *Storey*, 21 Wn. App. 413, 422 (1978), *overruled on other grounds by Chaplin v. Sanders*, 100 Wn.2d

21 853 (1984).  The "color-of-title statute does not require 'adverse' or 'hostile' possession; color of title

22 itself establishes these elements."  *Id.* at 423; *see also Gardenspot Ranch, Inc. v. Baker*, 11 Wn. App.

23 109, 114 (1974).

24

25

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1    Here, under RCW 7.28.070, the Court should grant summary judgment confirming that King

2  County acquired title to the one hundred feet of width described in its quit claim deed from TLC.[15]

3  *First*, King County holds the one hundred foot Corridor adjacent to Plaintiffs' properties under good

4  faith color of title.  BNSF sold its rights in the Corridor to TLC on April 23, 1997 through a quit claim

5  deed that includes an extensive description of the entire Corridor.  Nunnenkamp Decl. Ex. I.  TLC

6  then conveyed the Corridor to King County on September 18, 1998, using a quit claim deed with the

7  same legal description.  Nunnenkamp Decl. Ex. J.  As described in that recorded deed, the Corridor

8  is one hundred feet wide next to each of the Plaintiffs (except where prior transactions narrowed the

9  Corridor).  Nunnenkamp Decl. ¶ 18.

10    *Second*, King County has consistently paid all fees and "taxes legally assessed" on the one

11  hundred foot wide Corridor described in the recorded deeds, as did its predecessors in title.  These

12  sums include fees for surface water management, noxious weed control, and conservation futures.

13  Declaration of Susan Sweany ¶ 3.  The various fees and any property taxes due have been paid by

14  King County each year since 1998.[16]  King County's payment of fees and taxes substantially exceeds

15  the seven year requirement in RCW 7.28.070.

16    *Third*, King County's possession of the Corridor has been "open and notorious."  It has

17  satisfied this requirement by recording its interest in the Corridor and acting as trail sponsor in

18  proceedings before the STB.  Nunnenkamp Decl. ¶ 18.  King County physically removed the

19  Railroad's old tracks, including the ties.  *Id*. ¶ 2.  It installed an interim soft-surface trail and has

20  begun design of a permanent, paved trail.  *Id.*  Like the Railroad, King County has required adjacent

21  landowners to apply for permits for crossings or encroachments within the Corridor.  *Id.* ¶¶ 3-11.  It

22  has applied for various permits related to construction of the trail, including shoreline and grading

[15] As discussed above, the Corridor is narrower than 100 feet where adjacent to the Morel and Menezes and Vanderwende Plaintiffs, which is reflected in the legal descriptions of the quit claim deeds.  Nunnenkamp Decl. ¶¶ 21, 23-24.

[16] As a government entity, King County is exempt from property taxes but not from government fees associated with the property.  Sweany Decl. ¶ 3.

KING COUNTY'S MOTION FOR SUMMARY
JUDGMENT – Page 24
No. 2:15-cv-00284

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

permits. *Id.* ¶ 2.  These actions are more than sufficient, as "the necessary use and occupancy need only be of the character that a true owner would assert *in view of its nature and location.*"  *Chaplin v. Sanders*, 100 Wn.2d 853, 863 (1984).

Because King County has possessed one hundred feet of width under a good faith color of title and paid all taxes due since 1998, King County "shall be held and adjudged to be the legal owner of said lands or tenements, *to the extent and according to the purport of his or her paper title.*"  RCW 7.28.070 (Emphasis added).[17]  "[W]here one's occupancy or adverse use[] is under color of title that is a matter of public record, possession or use[] of a portion is regarded as coextensive with the entire tract described in the instrument under which possession is claimed." *Yakima Valley Canal Co. v. Walker*, 76 Wash.2d 90, 94 (1969) (citation omitted).  The "paper title" in that quit claim deed confirms the Corridor is one hundred feet wide next to all the Plaintiffs, except where fifty feet wide next to the Morel Plaintiffs and approximately seventy-five feet wide next to the Menezes and Vanderwende Plaintiffs.  Thus, regardless of what the SLS&E acquired, King County is entitled to summary judgment that it controls one hundred feet of width today.

### D.  THE PLAINTIFFS LACK ARTICLE III STANDING TO ASSERT THEIR CAUSE OF ACTION AGAINST KING COUNTY UNDER THE CENTERLINE PRESUMPTION BECAUSE THEIR DEEDS EXPRESSLY EXCLUDE THE CORRIDOR.

Finally, the Plaintiffs lack standing to assert their cause of action against King County's interests in the Corridor, because they cannot meet the requirements for standing under Washington's centerline presumption.[18]  The Court previously held in this same case that Plaintiffs' deeds exclude any interest in the Corridor, so they are not entitled to apply the centerline presumption under

---

[17] Further, because the Railroad previously held the Corridor under color of title, the seven year limitations period of RCW 7.28.070 began running when the railroad first recorded its interest under color of title in 1887.  Thus, Plaintiffs' right to file suit likely expired prior to 1900.

[18] Although Plaintiffs lack standing to bring their declaratory judgment claim, the Court nonetheless has jurisdiction over King County's counterclaims for declaratory judgment and quiet title.  *See Horse Heaven Heights, Inc.*, 132 Wash. App. 188 at 195-96 (standing is assessed separately for competing counterclaims to land).

KING COUNTY'S MOTION FOR SUMMARY
JUDGMENT – Page 25
No. 2:15-cv-00284

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1   Washington law.  Order, Dkt. No. 19, 2015 WL 3561533, at *2 (June 5, 2015).  Although the

2   Plaintiffs filed an Amended Complaint claiming to attach their chains of title, "the Washington

3   Supreme Court set *two* restrictions on the presumption," and the Plaintiffs cannot avoid the separate

4   holding that their deeds exclude any ownership interest in the Corridor.  *Id.* (emphasis added).

5          Because this matter comes before the Court on summary judgment, Plaintiffs can no longer

6   rest on the bare allegations of their Amended Complaint.  The elements of standing "must be

7   supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*,

8   with the manner and degree of evidence required at the successive stages of the litigation."  *United*

9   *States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012) (quoting *Lujan v.*

10  *Defenders of Wildlife,* 504 U.S. 555, 561 (1992)).

11         As this Court previously acknowledged, Plaintiffs lack standing under Article III if they

12  cannot demonstrate an "injury in fact."  *Sammamish Homeowners v. Cty. of King*, 2015 WL 3561533,

13  at *2 (W.D. Wash. June 5, 2015).  The Court also confirmed that where, as here, "a deed refers to the

14  right of way as a boundary but also gives a metes and bounds description of the abutting property,

15  the presumption of abutting landowners taking to the center of the right of way is rebutted."  *Id.*

16  (citing *Roeder Co.*, 105 Wash.2d at 567).  The Court then examined the individual deeds submitted

17  by the Plaintiffs, and found that all four properties at issue in King County's Motion to Dismiss

18  excluded any interest in the Corridor.  "That finding is law of the case and applies to the present

19  motion for summary judgment."  *Rojsza v. City of Ferndale*, 2013 WL 5945808, at *2 (W.D. Wash.

20  Nov. 5, 2013) (J. Pechman).  Plaintiffs' Amended Complaint does not (and cannot cure) legal

21  descriptions that exclude the Corridor from their property.

22         **The Hornish Plaintiffs.**  As the Court recognized when granting King County's motion to

23  dismiss, the Hornish Plaintiffs' "metes and bounds description describes the eastern boundary of the

24  property as the 'westerly line of the Northern Pacific right-of-way.'"  *Sammamish Homeowners*, 2015

25

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1   WL 3561533, at *1.  Therefore, their parcel lies entirely to the west of the Corridor.  Nunnenkamp

2   Decl. Ex. K at 1.

3       **The Neighbors Plaintiffs.**  The metes and bounds description of the Neighbors Plaintiffs'

4   property includes land on both sides of the Corridor, but specifically excludes any property interest

5   in the Corridor itself.  Nunnenkamp Decl. Ex. Q at 3.  As the Court has already held, they hold no

6   interest in the Corridor, because "[t]he metes and bounds description of the lot lines includes the term

7   'except that portion within the Northern Pacific Railroad right-of-way.'"  *Sammamish Homeowners*,

8   2015 WL 3561533, at *1.

9       **The Menezes and Vanderwende Plaintiffs.**  The Court acknowledged that the Menezes and

10  Vanderwende Plaintiffs also lack any interest in the Corridor, because "[t]he metes and bounds

11  description of the lot lines includes the term 'Except the right-of-way of the Northern Pacific

12  Railroad.'"  *Id.* at *1; Nunnenkamp Decl. Ex. M at 2.  Thus, they are unable to assert the centerline

13  presumption.[19]

14      **The Moore Plaintiffs.**  The Moore Plaintiffs are also unable to apply the centerline

15  presumption, because their "property is described in their metes and bounds description as 'lying

16  south of the Northern Pacific Railroad right-of-way.'"  *Sammamish Homeowners*, 2015 WL 3561533,

17  at *2.  Their deed firmly establishes the Corridor as the northern boundary of their parcel.

18  Nunnenkamp Decl. Ex. N at 3.

19      **Lake Sammamish 4257 LLC.**  Lake Sammamish 4257 LLC's metes and bounds description

20  defines the property as "[t]he east 60 feet of the west 590 feet of that portion of Government Lot 3

21  . . . lying southerly of the Northern [Pacific] Railroad right of way."  Nunnenkamp Decl. Ex. L at 2.

22  This exclusionary language is materially identical to the language in the Moore Plaintiffs' deed,

23

24  ---

[19] As King County explained in its Motion to Dismiss, the Menezes and Vanderwende Plaintiffs own a second parcel that
25  is not at issue in this case.  Their predecessor in interest, Ms. Goldsmith, acquired this parcel from BNSF before the
property was railbanked, and this property is not part of the Corridor.  *See* Hackett Decl. Ex. I.

KING COUNTY'S MOTION FOR SUMMARY
JUDGMENT – Page 27
No. 2:15-cv-00284

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1   which this Court already found insufficient.  *Sammamish Homeowners*, 2015 WL 3561533, at *2.

2   Because Lake Sammamish 4257 LLC's "metes and bounds provisions . . . describe property that

3   extends up to, but does not include, a railroad right of way, the presumption that abutting property

4   owners take title to the center of the right of way is rebutted."  *Roeder Co*., 105 Wash.2d at 575.

5       **The Morel Plaintiffs.**  The Morel Plaintiffs' deeds also excludes the Corridor.  Although the

6   Morel Plaintiffs own three parcels, they are described in a single quit claim deed, which states that

7   the Morel Plaintiffs acquired property "except a strip of land, 50 feet in width, reserved for railroad

8   right of way in [the] instrument recorded under King County recording No. 9609131191."[20]

9   Nunnenkamp Decl. Ex. P at 2.  This is nearly identical to the Menezes and Vanderwende Plaintiffs'

10  deed, which "includes the term 'except that portion within the Northern Pacific Railroad right-of-

11  way.'"  *Sammamish Homeowners*, 2015 WL 3561533, at *1.

12      Therefore, "[w]ith the centerline presumption rebutted" as a matter of undisputed fact,

13  "Plaintiffs have not properly alleged a property interest in the Corridor, and thus cannot plead an

14  actual or even threatened "injury in fact" sufficient to establish Article III standing."  *Id*. at 2. The

15  Plaintiffs cannot avoid the language of the metes and bounds descriptions in their own deeds, which

16  are "immediately fatal to their claim."  *Id*. at *2.  Their deeds confirm they do not meet the

17  requirements of the centerline presumption, and they lack the standing required to proceed.

18      Plaintiffs' lack of ownership in the Corridor is not surprising because any chain of title back

19  to the Corridor was severed in the 1909 Pierce County probate action, where Mr. Middleton's heirs

20  received no interest in the Corridor.  Hackett Decl. Ex. C.  Because Plaintiffs' predecessors in interest

21  held no ownership interest in the Corridor, there was nothing to pass on to Plaintiffs.  *See McGill v.

22  Shugarts*, 58 Wn.2d 203, 204 (1961) (A grantor can "convey by deed no greater interest than they

23  owned.").

---

[20] According to the Amended Complaint, the Morel Plaintiffs have filed suit only in regard to parcels number 072406-
9008 and 072406-9090, and not 724069115.  Am. Compl. ¶ 18.

KING COUNTY'S MOTION FOR SUMMARY
JUDGMENT – Page 28
No. 2:15-cv-00284

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

1    **V.    CONCLUSION**

2           For all these reasons, King County requests the Court enter summary judgment for King

3    County on the Plaintiffs' declaratory judgment claim and King County's counterclaims for

4    declaratory judgment and quiet title.

5           DATED this 28th day of January, 2016.

6                                          DANIEL T. SATTERBERG
                                           King County Prosecuting Attorney
7
                                           By: _s/ David J. Hackett_____
8                                          DAVID HACKETT, WSBA #21236
                                           Senior Deputy Prosecuting Attorney
9
                                           By: _s/ H. Kevin Wright_____
10                                         H. KEVIN WRIGHT, WSBA #19121
                                           Senior Deputy Prosecuting Attorney
11
                                           By: _s/ Peter G. Ramels_____
12                                         PETER G. RAMELS, WSBA #21120
                                           Senior Deputy Prosecuting Attorney
13
14                                         By: _s/ Barbara Flemming_____
                                           BARBARA A. FLEMMING, WSBA #20485
15                                         Senior Deputy Prosecuting Attorney

16
                                           King County Prosecuting Attorney's Office
17                                         500 Fourth Ave., 9th Floor
                                           Seattle, WA 98104
18                                         Telephone: (206) 296-8820 / Fax: (206) 296-8819
                                           Email: david.hackett@kingcounty.gov
19                                                 kevin.wright@kingcounty.gov
                                                   pete.ramels@kingcounty.gov
20                                                 barbara.flemming@kingcounty.gov
21
                                           By: _s/ Emily J. Harris_____
22                                         EMILY J. HARRIS, WSBA #35763
                                           DAVID I. FREEBURG, WSBA #48935
23                                         Special Deputy Prosecuting Attorneys
                                           Corr Cronin Michelson
24                                         Baumgardner Fogg & Moore LLP
25                                         1001 Fourth Avenue, Suite 3900

KING COUNTY'S MOTION FOR SUMMARY
JUDGMENT – Page 29
No. 2:15-cv-00284

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-8820 Fax (206) 296-8819

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Seattle, WA 98154
Telephone: (206) 625-8600 / Fax: (206) 625-0900
Email: eharris@corrcronin.com
　　　dfreeburg@corrcronin.com

*Attorneys for Defendant King County*

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

DATED this 28th day of January, 2016.

*s/Leslie Nims*
Leslie Nims

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

KING COUNTY'S MOTION FOR SUMMARY
JUDGMENT – Page 31
No. 2:15-cv-00284

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) (296-8820 Fax (206) 296-8819