UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THOMAS E. HORNISH AND SUZANNE J. HORNISH JOINT LIVING TRUST, et al.,

Plaintiffs,

v.

KING COUNTY,

Defendant.

CASE NO. C15-284-MJP

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

The above-entitled Court, having received and reviewed:

1. Defendant King County's Motion for Summary Judgment (Dkt. No. 46), Plaintiffs' Response (Dkt. No. 54), and Defendant's Reply (Dkt. No. 56);
2. Plaintiffs' Motion for Summary Judgment (Dkt. No. 55), Defendant's Response (Dkt. No. 61), and Plaintiffs' Reply (Dkt. No. 62);

all attached exhibits and declarations, and relevant portions of the record, and having heard oral argument, rules as follows:

IT IS ORDERED that Plaintiffs' motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment is GRANTED; Plaintiff's claims are ordered DISMISSED with prejudice.

## **Background**

At issue in this lawsuit is a strip of land formerly utilized as a railroad corridor in King County, Washington ("the Corridor"). The Corridor was created in the late 1800s by the Seattle, Lake Shore & Eastern Railway Company (the "SLS&E") through a combination of federal land grants, homesteader deeds and adverse possession, resulting in a strip of property comprised of both easements and fees simple. *See* Beres v. United States, 104 Fed. Cl. 408, 412 (2012).

The Hornish property is adjacent to land acquired by SLS&E through a quit claim deed in 1887 ("the Hilchkanum Deed"). (Decl. of Nunnenkamp, Ex. E.) When Hilchkanum sold the remainder of his property, he excluded the Corridor from the property description. (Id., Ex. F.) There are no original deeds for the portions of the Corridor adjacent to the remaining Plaintiffs. The property surrounding the Corridor in these areas was owned by the Northern Pacific Railroad by means of an 1864 land grant. (Id., Ex. G.) In 1889, Northern Pacific conveyed the land surrounding the Corridor to Mr. Middleton (without mentioning the Corridor; id. at Ex. H); Defendant claims that tax assessment rolls from 1895, however, exclude the 100 foot Corridor from Middleton's property. In the 1909 Pierce County probate action following Middleton's death, the Corridor was expressly excluded. (Decl. of Hackett, Ex. C. at 4, 8.)

SLS&E eventually became part of Burlington Northern & Santa Fe ("BNSF"). In 1997, BNSF conveyed its interest in the Corridor to The Land Conservancy ("TLC") via quit claim deed. (Decl. of Nunnenkamp, Ex. I.) Later that year, TLC petitioned the Surface Transportation Board ("STB") to abandon the use of the Corridor for rail service and King County declared its

intention to assume financial responsibility for the area as an "interim trail sponsor," a process created by the Trails Act known as "railbanking." *See* 16 U.S.C. § 1247(d).

On September 16, 1998, STB issued a Notice of Interim Trail Use ("NITU"). The Land Conservancy of Seattle and King County – Abandonment Exemption – in King County, WA, No. AB-6 (SUB 380X), 1998 WL 638432, at *1 (Sept. 16, 1998). As part of TLC's arrangement with the County to take over as trail sponsor, the County was granted all TLC's ownership interest in the Corridor, which was memorialized by a Quitclaim Deed recorded in King County. (Decl. of Nunnenkamp, Ex. J.) The County then constructed a soft surface public trail and is in the process of constructing a paved trail the length of the Corridor. (Mtn., at 4.)

**Discussion**

Hornish Plaintiffs' property

The County presents federal and state authority supporting its position that it owns a fee interest in this part of the Corridor. In King County v. Rasmussen, 299 F.3d 1077, 1087 (9th Cir. 2002), the Ninth Circuit Court of Appeals found that "Hilchkanum intended to convey a fee simple interest in the strip of land described;" the "strip of land" being a 100-foot corridor granted to SLS&E (which interest was later conveyed to the County). Two years later, the state court reached a similar conclusion (citing the reasoning in Rasmussen with approval) in Ray v. King County, 120 Wn.App. 564, 589 (2004).

Plaintiffs cite two cases as well. First, Brown v. State, 130 Wn.2d 430 (1996), which laid out a series of factors to be considered when determining whether an easement or fee was intended to be conveyed in a railroad right of way. Second, Kershaw Sunnyside Ranches, Inc. v. Interurban Lines, 156 Wn.2d 253 (2006) which held that "whether by quitclaim or warranty deed, language establishing that a conveyance is for right of way or railroad purposes presumptively conveys an easement…" Id. at 269.

The Court remains unpersuaded that Plaintiffs' authority stands for the proposition they assert (that the Hilchkanum Deed conveyed an easement). First of all, the Washington Supreme Court in Kershaw qualified their holding as follows: "[W]hen the granting document uses the term 'right of way' as a limitation or to define the purpose of the grant, it operates to 'clearly and expressly limit[] or qualify[y] the interest conveyed.'" Id. at 265 (citation omitted). The Hilchkanum Deed does not use the phrase "right of way" to describe or limit the purpose of the grant, an impression which is bolstered by the habendum language in the conveyance indicating that SLS&E is "[t]o have and to hold the said premises with the appurtenances unto the said party of the second part and its successors and assigns forever." (Decl. of Nunnenkamp, Ex. E at 2.) There are no conditions of use imposed on the grant. Had the Hilchkanums intended to limit the purpose of the grant, presumably they would not have assigned it unconditionally and forever to their grantee.

Second of all, even if the Court were to follow Kershaw to the point of entertaining the presumption that an easement was conveyed, the courts in Rasmussen and Ray went through the same analysis of the Brown factors that the Washington Supreme Court did in Kershaw and concluded that the grant intended to convey an interest in fee simple; i.e., the presumption was successfully rebutted. Plaintiffs have given us no reason to overturn that ruling. Indeed, neither Rasmussen nor Ray were overturned in the wake of Kershaw, and Rasmussen remains controlling precedent for this district.

Mention must be made (as both sides do) of Beres v. United States, 104 Fed. Cl. 408 (Fed.Cl. 2012), in which the Federal Claims Court examined the Hilchkanum Deed in the light of Kershaw and came to the exact opposite conclusion as the Ninth Circuit in Rasmussen; i.e., that the Deed conveyed an easement, not a fee interest. Id. at 430-31. The Federal Claims Court

conducted an exhaustive analysis of the Deed and the case law concerning the proper interpretation of such conveyances. In the final analysis, the most that can be said is that reasonable jurists disagreed: the Ninth Circuit arrived at one conclusion and the Federal Claims Court arrived at another. This Court is bound by Ninth Circuit ruling, and on that basis finds that the County owns the portion of the Corridor abutting the Hornish Plaintiffs' property in fee simple. The County's summary judgment motion in that regard is GRANTED.

The remaining Plaintiffs

*Nature of the railroad easements and the Trails Act*

The County seeks the authority to exercise all the rights in the Corridor that the railroads had. Plaintiffs interpose two interrelated arguments that they should not be allowed to do so.

Plaintiffs' first argument is that the Trails Act preserves the right of the railroad to reactivate its easement *for future purposes only*; another way Plaintiffs phrase this is by arguing that railbanking is not a "current railroad purpose" and that railbanking extinguishes the railroad easement. This is relevant to the County's argument that it has the power to exercise all the rights the railroad had under its railroad easement.

The weight of authority favors Defendant's position that railbanking does not extinguish, suspend or otherwise operate as an abandonment of the railroad easement. The Supreme Court has held that "interim use of a railroad right-of-way for trail use, when the route itself maintains intact for future railroad purposes, shall not constitute an abandonment of such rights-of-way for railroad purposes." Presault v. Interstate Commerce Commission, 494 U.S. 1, 8-9 (1990) (quoting H.R. Rep. No. 98-28 at 8-9 (1983)).

Nor does the language of the Trails Act lend itself to Plaintiffs' interpretation.

> [I]n furtherance of the national policy to preserve established railroad rights-of-way for future reactivation of rail service… in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter… *such interim use shall not be treated, for the purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes.*

16 U.S.C. § 1247(d)(emphasis supplied). As U.S. District Judge Coughenour of this district has pointed out in a similar case, (1) "preserve" means ""[t]o keep in its original or existing state: … to maintain or keep alive" (Oxford English Dictionary, 3d ed.) and (2) the statute says "preserve… *for* future reactivation," not "preserve *upon* future reactivation." Kaseburg v. Port of Seattle, 2015 WL 4508790 at *3-4 (W.D. Wash. July 24, 2015).

For their second argument on this point, Plaintiffs cite to a 1986 Washington case which held that the change in use (from rails to trails) of a railroad right-of-way constituted abandonment of the railroad easement. Lawson v. State of Washington, 107 Wn.2d 444, 452 (1986). But Lawson is not a case involving the federal Trails Act and thus that court was not guided (or constrained) by the language in the Trails Act indicating exactly the opposite. Plaintiffs also quote the language of the Federal Circuit court in a later Presault case (Presault v. United States, 100 F.3d 1525, 1554 (1996); "Presault II") that railbanking is not a "current railroad purpose" and in fact constitutes abandonment of such purpose. What Plaintiffs fail to point out is that the language is from a concurring opinion and has no precedential power.

The County takes its "no abandonment, no extinguishment" argument one step further and maintains that, by virtue of its quitclaim deeds from BNSF, it acquired all of BNSF's property interests in the Corridor. Decl. of Nunnenkamp, Ex's I and J. Judge Coughenour's Kaseburg order sides with the County on this issue, finding that "the Trails Act preserves railroad easements and [] a trail sponsor may own and exercise the rights inherent to the railroad

easement." 2015 WL 4508790 at *4.  The Kaseburg court found support for this holding in State v. Presault (63 Vt. 38, 42 (1994))("The fact that the defendants' excavation activities do not present a threat to the bicycle and pedestrian path is irrelevant because these activities impinge on the original railroad easement.") and a Federal Claims case which held that "a trail sponsor must have the same control over the entire right-of-way corridor that would be held by a railroad…" Illig v. United States, 56 Fed.Cl. 619, 631 (2003).

Secondarily, the County cites the "incidental use" doctrine, which "states that a railroad may use its easement to conduct not only railroad-related activities, but also any other incidental activities that are not inconsistent and do not interfere with the operation of the railroad." Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Assoc., 121 Wn.App. 714, 731 (2004), *reversed on other grounds*, 156 Wn.2d 253, 274 (2006)(citation omitted).  Railroads are public highways under Washington law and, "[i]n Washington, the owners of public highway easements retain exclusive control over uses incidental to their easements." Kaseburg, 2015 WL 6449305 at *8 (W.D. Wash., Oct. 23, 2015)(citation omitted).

As part of its claimed right to "incidental uses," the County seeks confirmation of its subsurface and aerial rights pursuant to its interest in the Corridor.  It claims these as co-extensive with the "railroad easement" rights it asserts were acquired in the quitclaim deed from TLC.  There is evidence in Kaseburg that "BNSF regraded parts of the corridor, built trestles over water, dug culverts, and built signaling equipment overhead ([C14-0784JCC] Dkt. No. 126 at 2-5.)" Id. at *7.  The Court takes judicial notice of those "incidental uses" exercised under the railroad's easement powers prior to conveying the Corridor, and adopts the finding in Kaseburg:

> Because the scope of trail easements under the Trails Act is coextensive with railroad easements, Illig, 58 Fed.Cl. At (*sic*) 63, the Court now holds that the Corridor Easements provide exclusive subsurface, surface, and aerial rights in the corridor for railroad and trail purposes."

Id.

It is the finding of this Court that the railroad easement survives, that the County's rights are coextensive with the railroad's and that it "is entitled to the exclusive use and possession of the area on, above, and below the surface of the Corridor for railroad purposes and incidental uses permitted by Washington law, including use as a recreational trail." (Mtn., at 1.)

The Court finds further support for this ruling in the language of the Trails Act itself: "[I]n furtherance of the national policy to preserve established railroad rights-of-way for future reactivation of rail service…" (16 U.S.C. § 1247(d).) The County would be unable to "preserve establish railroad rights-of-way for future reactivation of rail service" if it could not employ and protect the full range of rights which the railroad possessed in the Corridor (and which it may yet possess again). Summary judgment will be granted in favor of the County on this issue.

*Width of the Corridor*

Preliminarily, the Court disposes of the undisputed matters concerning this particular issue:

1. Although the County seeks a declaration that the Corridor is 100 feet wide, it acknowledges that BNSF entered into "prior property transactions" (specifically, with the Morels, Menezes and Vanderwendes Plaintiffs) which decrease the size of the Corridor in certain parcels (50 feet adjacent to the Morels, 75 feet adjacent to the Menezes and Vanderwendes; *see* Decl. of Nunnenkamp, ¶¶ 21, 23-24).

2. There are no original deeds delineating the nature of the property interest originally acquired by SLS&E/BNSF and conveyed to TLC and the County. This means that the property rights which the County seeks to establish must be analyzed as those emerging from an easement by prescription (as opposed to an easement arising from claim of title).

> There is a marked distinction between the extent of an easement acquired under a claim of right and the scope of one acquired under color of title. When one seeks to acquire an easement by prescription under a claim of right, user and possession govern the extent of the easement acquired. It is established only to the extent necessary to accomplish the purpose for which the easement is claimed. Northwest Cities Gas Co. v. Western Fuel Co., 17 Wn.2d 482, 135 P.2d 867 (1943).
>
> On the other hand, however, where one's occupancy or adverse use is under color of title that is a matter of public record, possession or user of a portion is regarded as coextensive with the entire tract described in the instrument under which possession is claimed. Omaha & Republican Valley R. v. Rickards, 38 Neb. 847, 57 N.W. 739 (1894).

Yakima Valley Canal Co. v. Walker, 76 Wn.2d 90, 94 (1969)

In keeping with the finding that the County possesses an interest and property rights coextensive with the railroad easement, Defendant's rights pursuant to a prescriptive easement would be those necessary for the operation of a railroad, and the boundaries of the Corridor would be the amount of property (up to 100 feet) required to accomplish that. The County presents ample evidence that railroad operations require boundaries that extend further than simply the width of the railroad tracks (Def Mtn at 20-22), including declarations from railroad personnel that a 100 foot wide corridor is required

- As a "safety buffer to ensure minimum setbacks between freight trains and residential development, to prevent nearby construction and development activities that could undermine the stability of the steep slopes above and below the tracks, and to provide

access for maintenance activities, such as tie replacement, that require significant clearance on one or both sides of the track." (Decl. of Nuorala, ¶ 8, Decl. of Hackett, Ex. J.)

- To provide space between each of the rails, side clearance, drainage of the slope, a drainage ditch, and access for maintenance and emergencies (such as derailments). (Decl. of Sullivan, ¶¶ 4-5, 8-9.)

The only Plaintiffs who bring forward any evidence that the 100 foot Corridor does not represent the extent necessary for railroad operations are the Morels, who present proof that at one point the house which originally stood on their property (from 1920-2000) was within the right of way now claimed by the County, as well as walkways and trees planted well within the Corridor. (Decl. of Morel, Ex. B.)

The Morel evidence does not suffice to create a disputed issue of material fact. First, the "extent of the right is fixed and determined by the user in which it originated" (NW Cities Gas Co. v. Western Fuel Co., 17 Wn.2d 482 486 (1943)(citation omitted)), in this case by the SLS&E in the 1890s. The Morels do not hold themselves out to be experts in railroad operations, do not rebut what Defendant's railroad experts say about the extent necessary for operations and do not create a disputed issue of material fact. Furthermore, the County has conceded that the Corridor narrows to 50 feet abutting the Morels' property line (a transaction in which the quitclaim deed acknowledged that the Morels were purchasing "a portion of BNSF's 100.0 foot wide Snoqualmie Line right of way;" Quitclaim Deed, Decl. of Nunnenkamp, Ex. O) and the Morels' current house is outside that 50 foot strip.

None of the other Plaintiffs provide similar evidence of encroachments upon the Corridor, but even had they done so the above analysis would apply. Plaintiffs' inability to provide any expert testimony rebutting Defendant's evidence of the necessity of a 100 foot wide corridor for railroad operations entitles the County to summary judgment on this issue.

*RCW 7.28.070*

BNSF executed a quitclaim deed to TLC in 1997 that included a complete description of the 100 foot-wide Corridor (with the exceptions noted above). (Decl. of Nunnenkamp, Ex. I.) The following year, TLC conveyed that same property (with the identical legal description) to King County. (Id., Ex. J.) Both deeds were recorded. Since assuming title to the property, the County has paid all fees and taxes on the Corridor, including fees for surface water management, noxious weed control, and conservation futures. Decl. of Sweany, ¶ 3.[1]

RCW 7.28.070 provides:

> Every person in actual, open and notorious possession of lands or tenements under claim and color or title, made in good faith, and who shall for seven successive years continue in possession, and shall also during said time pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title.

In addition to holding the Corridor "under claim or color of title" since the 1998 quitclaim deed and paying taxes on the property since that time, the County has been in "open and notorious" possession of the Corridor by recording the deed, appearing as trail sponsor in public

---

[1] The Morels claim to have paid taxes on the Corridor. (*See* Pltf Response, Ex. B., Dkt. No. 54-2 at 4-5, 10.) Their claims about their 1971 taxes (which actually appear to include portions of the Corridor) are irrelevant as they predate the County's acquisition of the property in 1998. Their assertions regarding their "Current Property Taxes" (p. 10) appear to indicate that, although they did not pay taxes based on a property line that includes the Corridor, their property's assessed value was based in part on improvements which encroach upon the Corridor. This is not the same thing as paying taxes on the Corridor and does not refute the County's claim to have done so since the 1998 conveyance.

proceedings before the STB, removing the old railroad tracks, installing a soft-surface trail and requiring adjacent landowners to apply for permits for crossings or other encroachments on the Corridor.  (Decl. of Nunnenkamp, ¶¶ 2-11, 18.)

The Washington Supreme Court has held that color of title exists when a deed "sufficiently describes the property in question and purports to convey it to the [movants]." Scramlin v. Warner, 69 Wn.2d 6, 8 (1966).  By recording the deed, the titleholder "dispenses with the need for other proof of a hostile or adverse claim… color of title itself establishes those elements."  Fies v. Storey, 21 Wn.App. 413, 422 (1978).  Finally,

> [W]here one's occupancy or adverse use[] is under color of title that is a matter of public record possession or use[] of a portion is regarded as coextensive with the entire tract described win the instrument under which possession is claimed.

Yakima Valley Canal Co. v. Walker, 76 Wn.2d 90, 94 (1969).

Plaintiffs make no substantive response to this argument, interposing instead an argument that they had "inadequate notice" (under FRCP 8(a)) that Defendant intended to assert claims that the Corridor was 100 feet wide or that the County claimed title by virtue of adverse possession.  It is not a persuasive argument.  Defendant's counterclaims included allegations that "Plaintiffs… have interfered with King County's property rights in the ELSRC by erecting and maintaining various unauthorized improvements that impede King County's access to its property, its exclusive control, and prevent public enjoyment" (Answer, Dkt. No. 32, Counterclaim ¶ 3)  and that "[u]nder RCW 7.28, title to any disputed portions of the corridor should be quieted in King County."  (Id. at ¶ 4.)  The Court finds it difficult to believe that, in a dispute about property lines, a party was not on notice that the actual size of the property was going to be an issue.

Plaintiffs also claim that "King County's request for summary judgment on the width issue… attempts to circumvent this Court's prior order remanding the issue to the Washington State court." (Pltf Response at 12.) Again, this fails to persuade. First, this Court did not remand "the width issue" to the Washington State court, but remanded the Neighbors v. King County case (C15-1358MJP) on Plaintiffs' motion. At no time have Plaintiffs moved to have this case stayed or remanded on the basis of that decision and they will not be allowed to cherry-pick an issue while proceeding forward with the remainder of this case. Either this case (and all its issues) is properly before this court or it is not. Additionally, the Hornish Plaintiffs are not a party to the Neighbors case, so their claims can only be adjudicated in this proceeding.

*Standing under the centerline presumption doctrine*

This is the resumption of an argument the Court addressed in June 2015. (Dkt. No. 19, Order re: Motion to Dismiss for Lack of Standing.) Roeder County v. Burlington Northern, 105 Wn.2d 567 (1986) is the Washington case which established the "centerline presumption" doctrine:

> Generally then, the conveyance of land which is bounded by a railroad right of way will give the grantee title to the center line of the right of way if the grantor owns so far, unless the grantor has expressly reserved the fee to the right of way, or the grantor's intention to not convey the fee is clear.

Id. at 576. However, the Washington Supreme Court set two restrictions on the presumption. The first restriction states:

> When, however, a deed refers to the right of way as a boundary but also gives a metes and bounds description of the abutting property, the presumption of abutting landowners taking to the center of the right of way is rebutted. A metes and bounds description in a deed to property that abuts a right of way is evidence of the grantor's intent to withhold any interest in the abutting right of way, and such a description rebuts the presumption that the grantee takes title to the center of the right of way.

Id. at 577.  The Court's previous ruling (that Plaintiffs' deeds contained metes and bounds descriptions that used the railroad right of way as a boundary) is the law of the case.

The second restriction concerns chain of title:

> The presumption that the grantor intended to convey title to the center of the right of way is inapplicable where the adjoining landowner presents no evidence of having received his or her property from the owner of the right of way.  A property owner receives no interest in a railroad right of way simply through ownership of abutting land.

Id. at 578.  Plaintiffs also claim they have established chain of title back to the original grantor. First, their failure to establish the first prong of the centerline presumption test renders their proof in this regard moot.  Second, they do not succeed in establishing the chain of title -- Defendant presents evidence that in the probate of the original grantor (Middleton), the Corridor was specifically excluded. (Decl. of Hackett, Ex. C at 4, 8.)  It is, at the very least, a disputed issue of material fact but (as mentioned) the Court is not convinced that proof one way or the other would be determinative of the issue.

In rebuttal, Plaintiffs file a declaration from an "expert witness," a civil engineer with purported expertise in "identifying source deeds that Railroads used in acquiring specific property and determining what rights were conveyed to the Railroad." (Decl. of Rall, Dkt. No. 54-4, ¶ 1.)  The expert makes no mention of having examined the Middleton probate document which excludes the Corridor.  More critically, Plaintiffs offer no authority supporting their right to offer expert testimony on the legal interpretation of a deed.  On the contrary, "expert testimony [regarding] the interpretation of a contract [is] an ultimate question of law upon which the opinion of an expert may not be given." PMI Mortgage Ins. Co. v. Amer. Int'l Specialty Line Ins. Co., 291 Fed.Appx. 40, 41 (9th Cir. 2008).  The Court has not considered the expert's opinion in reaching its conclusion on this issue.

Ultimately, the Court finds the issue of the centerline presumption to be non-determinative of the issues presented by this case. In the first place, it is only a presumption and a ruling one way or the other would not foreclose the losing party from presenting evidence to rebut the presumption. Secondly (and more to the point), the Court's rulings on the other issues presented establish the parties' respective rights to a degree which renders the centerline presumption doctrine inapplicable.

**Conclusion**

The Court GRANTS summary judgment to King County on the following issues:

1. "Railbanking" under the Trails Act preserved all rights formerly held by the railroad easement owners.
2. King County holds all of BNSF's property rights (besides the trail rights created by the Trails Act); i.e., King County holds a "railroad easement" and a "trails easement."
3. As holders of a "railroad easement," the County has subsurface, surface and aerial rights in the Corridor to extent permitted by Washington law.
4. The County owns the portion of the Corridor adjacent to the Hornish property in fee.
5. Except where narrowed by prior transactions, the County owns a 100 foot-wide easement adjacent to Plaintiffs' property.
6. Even if the County had not acquired the 100 foot Corridor from BNSF, it acquired the same through the operation of RCW 7.28.070.
7. Plaintiffs lack standing under the centerline presumption doctrine to challenge the County's property rights.

The above rulings necessarily operate to DENY Plaintiffs' motion for summary judgment.

From the Court's reading of Plaintiffs' amended complaint, this ruling resolves the issues raised by their litigation. If there are issues remaining to be decided, the parties are invited to bring them to the Court's attention. If not, Defendant is directed to submit a judgment reflecting the outcome of these dispositive motions and terminating the lawsuit.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 20th day of April, 2016.

Marsha J. Pechman
United States District Judge